TREPTAU and another, Respondents, vs. BEHRENS SPA, INC., Appellant.

*September 11—October 16, 1945.*

440

For the appellant there was a brief by *Thorson, Seymour & Korf* of Elkhorn, and oral argument by *William L. Seymour*.

For the respondents the cause was submitted on the brief of *Jacobson, Malone & Hippenmeyer* of Waukesha.

FRITZ, J.    The defendant, Behrens Spa, Inc. (hereinafter called "Spa"), is incorporated as a hospital under Wisconsin laws and operates a hospital and sanitarium at Waukesha and employs physicians and chiropractors, including Drs. Behrens and Dixon.   On August 27, 1941, the plaintiff, Elsie Treptau, went to the Spa for treatment of what she thought was a sprain of her right foot.   Dixon told her she needed vertebra "adjustments," and between that date and September 14th Dixon gave her several chiropractic treatments and Behrens gave her one adjustment.   In the course of those treatments the swelling and painfulness of the foot increased greatly and on Sunday, September 14th, an X ray was taken under Behrens' direction at the Spa, and by palpation in combination with the X ray he determined that she was suffering from arthritis.   Thereupon,—according to evidence relied upon by plaintiffs, but disputed in some respects by defendant,— Behrens applied a circular bandage consisting of two pieces of tape about eighteen inches long and one and one-half inches wide, starting one piece of tape about the top of the instep and going around the instep twice, and the other piece of tape went the other way.   While applying the tape he told Mrs. Treptau she had a bone infection, and to grind her teeth as he put on the tape and "tied it real tight;" and she testified she suffered a great deal of pain when it was applied.   Immediately thereafter Behrens ordered diathermo-heat treatments;

and in addition she was given two such treatments on Monday and two on Tuesday. After the first heat treatment she was put in bed at the Spa, and complained to a nurse that the bandage was too tight and the pain was too great. Dr. Rice, an employee at the Spa, was called and loosened the tape a little at the top of the foot but not around it. While she was being given the subsequent heat treatments the circular bandage was still in place and unloosened around the foot. She continually complained of great pain, and the foot began to swell, and on Tuesday it became black and blue and was very painful, and so swollen that it was covering the upper part of the adhesive tape bandage which was tight. She asked two of the nurses to call a doctor, but none was available except Dr. Thatcher, one of the chiropractors; and he refused to examine the patient because he did not know her. She then begged the nurses to help her take the tape off, which they did. She returned to her home Wednesday morning and called Dr. Wheelihan for treatment.

Upon concluding the introduction of evidence, defendant moved for a directed verdict. That motion was denied, but the court granted a motion by plaintiffs for the amendment of their complaint to conform with the proof to the effect that the defendant was guilty of malpractice in applying a restrictive tape simultaneously or practically simultaneously with the giving of electric-therapy treatments subsequent to the application of the tape. Thereupon the court submitted the case to the jury on plaintiffs' theory that, as a matter of law, defendant can be held liable to plaintiffs if there was a failure on the part of its employee in bandaging the swollen foot, in the manner in which he did, in combination with applying the diathermic treatment to the foot, to exercise such reasonable care and skill as was usually possessed and exercised by physicians in good standing in a recognized school of the medical profession in the vicinity of Waukesha, having due regard to the advanced state of medical science at the time;

and that, if there was such a failure, plaintiffs can recover from defendant such damages as each sustained by reason of such increased ailments, disabilities, and suffering of Elsie Treptau as were caused by such failure. And in answer to questions submitted by the court for a special verdict, the jury found (1) that by bandaging the foot and at the same time applying diathermic treatment thereto, defendant failed to exercise such reasonable care and skill as was usually exercised and possessed by physicians who were in good standing in the school of medicine in the vicinity of Waukesha, Wisconsin, having due regard to the advanced state of medical science in August and September, 1941; and (2) that such failure was a cause of the ailments and disabilities suffered by Mrs. Treptau after such treatment.

Defendant's first contention on this appeal is that the court erred (1) in disregarding the well-established principle of law that a physician or surgeon is not liable for malpractice if he selects and uses one approved method of treatment although some other experts testified that if they were treating the case they would use another method, or that the method employed was improper; and (2) that since there was testimony that the method employed by defendant is a method of treatment recognized by the medical profession in Waukesha and vicinity, defendant cannot be held guilty of malpractice in treating the plaintiff.

That in these respects there was no error on the part of the court, and that, on the contrary, that principle of law was consistently considered applicable by the court, is clearly evident from the record throughout the trial, including the following instruction to the jury:

"You are further instructed that if you find from all the credible evidence in the case that the school of medicine recognizes more than one method of diagnosis or treatment of the condition which affected the plaintiff's right foot, it was not required, at its peril, to select one or the other of such methods

and was at liberty to select either of said methods and may not be considered wanting in the required degree of care and skill merely because expert witnesses give their opinion that some other method would have been preferable."

Consequently, defendant's contention in that respect cannot be sustained.

Defendant's second contention is that "a verdict in a malpractice case" must "be based upon expert opinion evidence to a reasonable certainty that there was malpractice and that the malpractice proximately caused the condition complained of." That is also correct. But again in these respects it is evident from the record that the court rightly concluded and duly instructed the jury that *plaintiffs must prove to a reasonable certainty,* by expert opinion evidence (1) that there was malpractice on the part of defendant's employees, and (2) that such malpractice proximately caused such damages as the jury assessed. Thus, as to both of these,—as well as other,—issues submitted by the questions for the special verdict, there was applicable the court's instruction that the burden of proof to establish the affirmative in answer thereto rests upon the plaintiffs; and that,—

"you will observe in these instructions and in reference to each of the questions, I have indicated the party upon whom the 'burden of proof' rests. If ten or more of your number are satisfied by a preponderance of the evidence *to a reasonable certainty* that the party having the burden of proof has established his or her contention, then you should answer such question or subdivision 'Yes.' If ten or more of your number are not so satisfied, then you should answer such question or subdivision 'No.' "

Under this instruction the jury was free to accept, in determining those issues as to whether there was malpractice on the part of defendant's employees, either the opinions, as experts, testified to by the witnesses, Drs. Werra, Wheelihan, and Nicely, or to accept the opinions testified to by

Drs. Scheele, Young, and Behrens. The jury evidently saw fit to accept the testimony of plaintiffs' expert witnesses, Drs. Werra and Wheelihan, corroborated in part by the testimony of Dr. Nicely, who was one of the defendant's staff. Likewise, in relation to the proof required to establish that such malpractice (if the jury so found) was "a cause of the ailments and disabilities suffered by the plaintiff after such treatment," the record shows that in submitting this issue to the jury, the court, after duly defining the term "cause," rightly instructed:

"If you find that such disabilities or ailments from which Elsie Treptau suffered after the treatment were such as followed as a natural and probable result of the failure of the agents or employees of the defendant to exercise the reasonable care and skill defined in the first question, and if you find that they, if exercising such care and skill as physicians, ought reasonably to have foreseen that disabilities or ailments would probably and naturally follow from their failure to exercise such reasonable care and skill (other than such ailments or disabilities as would have resulted if they had treated Elsie Treptau with such reasonable care and skill), then you will answer 'Yes' to this question; if you are not so satisfied then you will answer 'No' to this question."

However, in relation to the issue as to cause, defendant contends, furthermore, that there is no credible evidence to sustain to a reasonable certainty the jury's finding that the use of the treatments in combination by defendant was the cause of the increased ailments, disabilities, and suffering, or that such increase, if any, was a natural and probable result of such use of the treatments by defendant. And defendant claims that as there was testimony that Mrs. Treptau's ailments and disabilities and pain could have been caused by the arthritic condition which affected her foot, the burden of proof is not met by plaintiffs showing that it might also have been caused by defendant's unskilful treatment; that there is no testimony that the bandages were applied in such manner

as to impair circulation in the foot; that the claim that a tight bandage would aggravate arthritic condition has no basis in medical fact; and that in the absence of gangrene, no injury could result from the application of a tight bandage.

That contention and these claims of defendant cannot be sustained. The jury's findings as to defendant's malpractice, as stated above, and that it caused increased ailments, disabilities, and suffering and damages, can be considered warranted by testimony to the following effect: That when Behrens on Sunday, September 14th,—after determining, upon taking an X ray and by palpation of the foot, that Mrs. Treptau was suffering from arthritis,—applied the bandages real tight so that he told her to "grind her teeth;" that she suffered a great deal of pain while he applied the tape; and that when in combination therewith he immediately applied the diathermic treatments of heat, plaintiff complained that the bandage was too tight and the pain was too great, but that although defendant's employee, Dr. Rice, was called, he only loosened the tape a little at the top of the foot, and he did not loosen it around the foot. Furthermore, that while plaintiff was being given four additional diathermic treatments at the Spa on the following Monday and Tuesday, the circular bandage was still in place and unloosened around the foot; that it began to swell and became black and blue and very painful, and so swollen that it was covering the upper part of the adhesive tape bandage which was tight; that she continually complained of great pain, and, although she asked two nurses to call a doctor, none were available except one of the chiropractors, Dr. Thatcher, who refused to examine the patient because he did not know her; and that plaintiff then begged the nurses to help her to take the tape off, which they finally did. That Tuesday night the foot was black and blue and very painful and on Wednesday morning Mrs. Treptau returned to her home and Dr. Wheelihan was called about midnight. He testified he examined the foot and found it extremely swollen

and very tender to touch, with a bluish, reddish dust color; that this condition indicated a markedly impaired circulation, and he felt, when he saw the foot early that morning, that it was a condition of threatened gangrene which was the result of impaired circulation; that in his opinion, assuming the testimony given on the trial by Mrs. Treptau and Dr. Behrens to be true, the probable and direct cause of the impaired circulation in the right foot and the condition which he found, was the constricting tape and diathermy treatments while the tape was in place; and that he believed the treatment which was given is not in accord with the recognized proper practice in this community. That the combination of the constricting bandage plus diathermy was not proper in any school or field of medicine; that the bandage constricts the circulation and the heat tends to increase the circulation; that one or the other would have been proper, but not the combination; and that he has an opinion to a reasonable certainty that such treatment and the accentuation of the arthritic condition of the foot probably resulted in the present condition of the foot which will continue and be permanent. Likewise, Dr. Werra testified the treatment given was not in accord with the skill and diligence usual in this type of condition, and the treatment given accentuated the arthritic condition; and such condition, —that is the present loss of flexion and limitation found in the right foot,—would continue and be permanent. In addition, there was Dr. Nicely's testimony that,—

"The practically simultaneous application of the bandage and the heat treatments would hardly be considered good treatment in this community."

As Drs. Wheelihan's, Werra's, and Nicely's testimony in relation to the issues as to the malpractice and the causal effect thereof was based upon the actual facts and not mere speculative or conjectural matters, it was not incompetent on the grounds because of which the physicians' testimony was

held incompetent in *DeSham v. Taugher,* 183 Wis. 446, 198 N. W. 268; *Mayer v. Hipke,* 183 Wis. 382, 197 N. W. 333.

Defendant further contends that medical practitioners such as Dr. Wheelihan or Dr. Werra, are not competent to testify as to the degree of care and skill required to be used by a chiropractor in treating a patient; and therefore it was error to permit a finding, based on the testimony of such medical practitioners, that there was a failure on the part of defendant's employees to exercise the required care and skill. In support of its contention defendant cites *Kuechler v. Volgmann,* 180 Wis. 238, 192 N. W. 1015, 31 A. L. R. 826, and relies upon the rule stated in *Nelson v. Dahl,* 174 Minn. 574, 576, 219 N. W. 941, viz. :

"When a patient selects one of the several recognized schools of treatment, he thereby adopts and accepts the kind of treatment common to that school; and the care, skill, and diligence with which he is treated, when that becomes a question in the courts of this state, must be tested by the evidence of those who are trained and skilled in that particular school of treatment." *Bolles v. Kinton,* 83 Colo. 147, 263 Pac. 26, 56 A. L. R. 814; *Cook v. Moats,* 121 Neb. 769, 238 N. W. 529, 78 A. L. R. 694, 701.

That rule is not applicable in view of the real issue in this case. Plaintiffs do not claim there was malpractice on the part of the defendant while Behrens was engaged in the practice of chiropractry by chiropractic manipulation or adjustments of the spine. Instead, plaintiffs contend there was malpractice when he and his associates went beyond the practice of chiropractry and entered into the general field of the practice of medicine, by the application of the bandage to the foot and by giving in conjunction therewith, the diathermo-heat treatments, neither of which was the practice of chiropractry by chiropractic manipulation or adjustment of the spine. On the contrary, the application of the bandages and the heat treatments given in this case are part of the general practice of schools of medicine, and, in so far as there was thus an in-

,vasion of the general field of that practice, the methods thus used by defendant's employees in diagnosis and treatment were subject to the rules applicable in the practice of medicine and surgery. *Janssen v. Mulder*, 232 Mich. 183, 205 N. W. 159; 78 A. L. R. 701; 115 A. L. R. 957; 86 A. L. R. 630. Consequently there was applicable in this case the rule that the considered opinion of a qualified member of the profession of medicine and surgery is competent and proper to determine and testify as to whether or not the treatment given constituted the required degree of care and skill which physicians in good standing in the community usually exercise. When there is such an invasion of the field of medicine by the treatment given, the rule, which confines the inquiry as to the required degree of a practitioner's skill and care to the rules and principles of chiropractry or the particular school of science or medicine to which he belongs, does not exclude the testimony of physicians of the other schools when that testimony bears on a point in relation to diagnosis or treatment as to which the principles of the schools do or should concur. 41 Am. Jur., Physicians and Surgeons, p. 243, sec. 130; *Willett v. Rowekamp*, 58 Ohio App. 465, 16 N. E. (2d) 797, 134 Ohio St. 285, 16 N. E. (2d) 457; *Wemett v. Mount*, 134 Or. 305, 292 Pac. 93; *Hutter v. Hommel*, 213 Cal. 677, 3 Pac. (2d) 554; *Van Sickle v. Doolittle*, 173 Iowa, 727, 155 N. W. 1007; *Henslin v. Wheaton*, 91 Minn. 219, 97 N. W. 882; *O'Connor v. Bonney*, 57 S. D. 134, 231 N. W. 521; *Bellheimer v. Rerucha*, 124 Neb. 399, 246 N. W. 867; *Cook v. Moats, supra; Grainger v. Still*, 187 Mo. 197, 85 S. W. 1114, 70 A. L. R. 49; *Swanson v. Hood*, 99 Wash. 506, 170 Pac. 135; *Janssen v. Mulder, supra*. See also *Nelson v. Harrington, 72*. Wis. 591, 40 N. W. 228, 1 L. R. A. 719.

In *Kuechler v. Volgmann, supra*, this court held,—

"When a chiropractor assumes to diagnose and to treat disease he must exercise the care and skill in so doing that is

usually exercised by a recognized school of the medical profession." (Syllabus.)

And as the court at pages 242 and 244 said in that case,—

"Malpractice may consist in the lack of skill or care in diagnosis as well as in treatment. *Jaeger v. Stratton,* 170 Wis. 579, 176 N. W. 61. . . . It is clear from the allegations of the complaint that defendant undertook to diagnose as well as to treat the disease. Diagnosis is ordinarily assumed and performed by licensed medical or osteopathic physicians. But it may be assumed by others, and it is held that the practice of chiropractic is the practice of medicine. *Comm. v. Zimmerman,* 221 Mass. 184, 108 N. E. 893; *State v. Barnes* (S. C.), 112 S. E. 62. And the fact that chiropractors abstain from the use of words like diagnosis, treatment, or disease is immaterial. What they hold themselves out to do and what they do is to treat disease, and the substitution of words like analysis, palpation, and adjustment does not change the nature of their act. *Comm. v. Zimmerman,* 221 Mass. 184 (108 N. E. 893), and cases cited on page 189. Hence when the defendant assumed to perform that duty he must exercise the care and skill in so doing that is usually exercised by a recognized school of the medical profession. *Nelson v. Harrington,* 72 Wis. 591, 40 N. W. 228."

Likewise there cannot be sustained defendant's contention that because it cannot lawfully engage in the practice of medicine under secs. 147.14, 147.22, Stats., it cannot be held liable for damages caused by malpractice in the performance of professional acts of its staff. *Kuglich v. Fowle,* 176 Wis. 60, 186 N. W. 188, cited by defendant is not in point. In that case the hospital was held not liable because the negligent wrapping of a hot-water bottle, which resulted in injury to his patient, was considered to be his own act as the physician for the patient and not an act performed for the hospital as its employee or agent or a member of its staff. In addition, defendant relies on *Black v. Fischer,* 30 Ga. App. 109, 117 S. E. 103, and *Iterman v. Baker,* 214 Ind. 308, 15 N. E. (2d) 365.

However, the better and more generally adopted rule is that,—
"A hospital conducted for private gain is liable to its patient for injuries sustained by him in consequence of the incompetency or negligence of a physician treating him at its instance, under a contract binding it to furnish him proper treatment. A physician so employed is not an independent contractor." 26 Am. Jur., Hospitals and Asylums, p. 597, sec. 14; *Stuart Circle Hosp. Corp. v. Curry,* 173 Va. 136, 3 S. E. (2d) 153, 124 A. L. R. 176; *Jenkins v. Charleston General Hospital & Training School,* 90 W. Va. 230, 110 S. E. 560, 22 A. L. R. 323; *Vaughan v. Memorial Hosp.* 100 W. Va. 290, 130 S. E. 481; *Brown v. La Societe Francaise, etc.,* 138 Cal. 475, 71 Pac. 516; *Hedlund v. Sutter Medical Service Co.* 51 Cal. App. 327, 124 Pac. (2d) 878; *Gilstrap v. Osteopathic Sanitorium,* 224 Mo. App. 798, 24 S. W. (2d) 249; *Burmingham Baptist Hosp. v. Branton,* 218 Ala. 464, 118 So. 741; *Giusti v. Weston Co.* 165 Or. 525, 108 Pac. (2d) 1010. See also other cases cited in 124 A. L. R. 186, 187.

It is also contended by defendant that it was entitled to specific questions in the special verdict covering (1) as to whether the tape was applied so as to impair circulation, (2) as to whether it was loosened, and (3) as to whether plaintiff's pain and suffering were increased as a natural and probable result of the defendant's failure to exercise reasonable skill. None of the questions thus requested were in relation to an ultimate issue in the case. They were questions as to mere evidentiary facts or matters in issue and therefore were not proper subjects for special questions in a verdict. *Mauch v. Hartford,* 112 Wis. 40, 87 N. W. 816; *Kellner v. Christiansen,* 169 Wis. 390, 172 N. W. 796.

Neither did the court err, as defendant contends, in permitting plaintiffs to amend their complaint, as hereinbefore stated, by charging defendant with negligence in doing simultaneously the acts as to each of which it was charged in the complaint originally there was negligence in defendant's per-

formance thereof. Defendant claims plaintiffs entirely disregarded all of the specifications in the complaint of negligent conduct as to diagnosis and treatment; that they attempted to use as the basis of recovery a theory not advanced until the time of the trial; and that this theory is entirely inconsistent with the claim in the complaint as to the condition which affected the plaintiff's right foot, and her claim as to what the proper treatment therefor should have been. Upon a review of the record, it is our conclusion that it was within the court's discretion and province to permit the amendment to conform to the proof as it developed on the trial, and can be deemed to prove that there was malpractice by reason of the combination of the bandaging and the simultaneous and subsequent diathermic treatment,—rather than of either treatment alone; and that as the result of such malpractice Mrs. Treptau's disability and suffering and her and her husband's damages were increased. As was said in *Duffy v. Scott,* 235 Wis. 142, 147, 292 N. W. 273,—

"Where a good cause of action appears from proofs received without objection, a variance between the allegations of the complaint and the evidence is not material. The pleadings may be taken as amended to conform to the proofs."

Under the circumstances the court could have ordered the amendment on its own motion. *Wulfers v. E. W. Clark Motor Co.* 177 Wis. 497, 188 N. W. 652; *Klaus v. Klaus,* 162 Wis. 549, 156 N. W. 963; *Duffy v. Scott, supra; Forkenbridge v. Excelsior Mut. B. & L. Asso.* 240 Wis. 82, 86, 2 N. W. (2d) 702.

*By the Court.*—Judgment affirmed.