BETTY N. CORRELL, appellant, v. J. M. GOODFELLOW, appellee.
CHARLES CORRELL, appellant, v. J. M. GOODFELLOW,
appellee.

No. 51104.

(Reported in 125 N.W.2d 745)

1238

JANUARY 14, 1964.

Porter, Heithoff & Pratt, of Council Bluffs, for appellants.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellee.

GARFIELD, C. J.—Betty N. Correll, whom we call plaintiff, sued J. M. Goodfellow, a chiropractor in Council Bluffs, at law for alleged malpractice in burning her foot while treating it with an ultrasonic machine. Betty's husband also sued defendant for alleged loss of consortium resulting from the injury. The cases were consolidated for trial. At the close of the evidence the trial court sustained generally defendant's motion for directed verdict which asserted, in effect, the evidence was insufficient to show plaintiff's injury was caused by any failure of defendant to exercise the requisite skill in applying the treatment. The appeal is from judgment on the directed verdict.

Plaintiff, 70 at the time of trial in May 1962, went to defendant September 26, 1960, for a sore back. She had been diabetic since 1948 and told defendant of her ailment. Defendant

took X rays of plaintiff's back, pronounced it in bad condition and assured her he treated diabetics. She purchased 12 treatments in order to save $6 from single treatment prices. Defendant treated plaintiff's back on September 26, 28 and 30.

Saturday, October 1, plaintiff turned her ankle and limped when she went to defendant for the treatment of her back on Monday, October 3. Defendant asked why she was limping; she replied she turned her ankle. Defendant said he had a machine which would take care of that. When he got out the ultrasonic machine she said, "I'm diabetic, you wouldn't dare use that on my foot." Defendant assured her "that won't bother you at all. You don't have that much diabetes." He proceeded to use the machine on her foot and repeated the treatment October 5 and 7.

An ultrasonic machine produces radiations which penetrate the tissue to cause internal vibrations which in turn cause heat to be generated deep inside the tissue. In fewer words, it is an electrical machine which produces heat by friction inside the tissue.

When defendant "plugged in" the machine plaintiff told him she did not know chiropractors used those machines. He said, "I'm trying it out. *I don't know anything yet about it,* whether I want it or not. If it works I'm going to buy it. I won't buy it unless I know it works."

The second time defendant used the machine on plaintiff's foot it made the foot "so hot inside" and she so informed him. She went home "in such pain." Before plaintiff returned to defendant on October 7 her foot was blistered. She showed the blister to him and told him he caused it. So far as shown he made no denial. He treated the ankle the same on the 7th as on the two previous times. When plaintiff returned on October 10 she told defendant he could not "use that thing anymore. Look what you did to my foot." There was a blister on the heel and across the bottom of the foot. Only the three ultrasonic treatments were administered.

There is ample evidence plaintiff's foot was blistered and ulcerated from a burn or burns caused by defendant's use of the ultrasonic machine. The injury was treated by a chiropodist-

podiatrist in Omaha from October 15 to November 21 when he told plaintiff she must see her physician immediately. Plaintiff's physician took over treatment of the injury November 21. He sent her to a hospital January 8, 1961, where she was a patient until March 5. February 26 and March 1 the physician removed the back part of the injured heel. He testified plaintiff has about 25 percent permanent partial disability of the foot and perhaps 15 percent permanent total disability of the foot and ankle.

We will refer later to evidence we think made the issues of defendant's alleged negligence, and that it was the proximate cause of plaintiff's injury, for the jury.

I. Plaintiff's petition (as well as the husband's) alleges defendant was negligent in administering the ultrasonic machine and was not exercising that degree of skill usually exercised by chiropractors in Council Bluffs, defendant was incompetent to use the machine because of his own admission he was merely trying it out, and knew or should have known it should not have been applied to a diabetic.

Three months and 20 days after the petition was filed plaintiff filed an amendment thereto adding to paragraph 3 thereof, just summarized, the allegation that defendant used the ultrasonic machine in violation of chapter 151, Code, 1958, particularly section 151.1. Defendant resisted the amendment on four grounds: it was not timely; regulation of chiropractors is exclusively for the state; an individual cannot raise such a question; the amendment has no bearing on the standard of care required of defendant.

Code chapter 151 regulates and limits the practice of chiropractic. So far as material here, section 151.1 defines persons engaged in such practice as "Persons who treat human ailments by the adjustment by hand of the articulations of the spine or by other incidental adjustments." This definition does not greatly differ from the well-known and generally accepted definition of chiropractic. State v. Boston, 226 Iowa 429, 436, 278 N.W. 291, 284 N.W. 143.

The use of such a device as an ultrasonic machine on patients does not come within the limited definition of chiro-

1242

practic but constitutes part of the practice of medicine and surgery. State v. Boston, supra; Joyner v. State, 181 Miss. 245, 179 So. 573, 115 A. L. R. 954, and annotation, 957, 958; Treptau v. Behrens Spa, 247 Wis. 438, 20 N.W.2d 108, 113; Annotation, 86 A. L. R. 623, 630 ("A chiropractor cannot give electrical treatments without exceeding his authority." Citations).

The trial court, Judge Everest, denied plaintiff permission to so amend her petition. There was no separate ruling on each of the grounds of defendant's resistance as required by rule 118, Rules of Civil Procedure. Nor does the record show the basis of the ruling.

█ Plaintiff applied to us under rule 332(a), R. C. P., to grant an appeal from the ruling. We denied the application. Such denial was not an approval of the ruling but merely a refusal, upon considerations we deemed sufficient, to review it in advance of final judgment. Deere Mfg. Co. v. Zeiner, 247 Iowa 1364, 1379, 78 N.W.2d 527, 79 N.W.2d 403, 404. See also Rubendall v. Brogan Constr. Co., 253 Iowa 652, 657, 113 N.W.2d 265, 268.

█ Six months and ten days after the petition was filed plaintiff filed a motion for leave to amend her petition and a proposed amendment which would add to her paragraph 3 the same allegation contained in the previous, denied, amendment, and also the allegation that by using the ultrasonic machine defendant invaded the field of the practice of medicine and failed to exercise that degree of care and skill usually exercised by doctors of medicine in Council Bluffs. The record shows no objection by defendant to the filing of the amendment.

The court, Judge Cullison, ruled as to the first paragraph of the proposed amendment Judge Everest's order was the law of the case and such paragraph was disallowed. With reference to the second paragraph of the amendment the court ruled defendant was under a duty in the use of the ultrasonic machine to exercise such care as a person skilled in such use is required to exercise. No other ruling was made on plaintiff's motion for leave to amend. Apparent effect of the ruling was to allow the second paragraph of the amendment as changed or amended by the court.

II. The first of two assigned errors is the refusal to permit the amendment—we understand, the second one.

We think it was error to hold Judge Everest's order disallowing the first amendment was the law of the case. As stated, one ground of defendant's resistance to its allowance is it was not timely. The first ruling may have been placed upon this ground. Defendant tells us in argument trial of the case was to commence three days after the first amendment was filed. (This trial was continued with defendant's consent.) So far as appears, no such situation existed when the second amendment was filed—about three and one-half months before trial commenced. Rubendall v. Brogan Constr. Co., supra, 253 Iowa 652, 657, 113 N.W.2d 265, 268, supports our conclusion on this point.

 With reference to the ruling on the second part of the (second) amendment, of course it is true, as defendant argues, the trial court has a good deal of discretion whether to allow an amendment to a pleading after a pleading has been filed responding to it. Rule 88, R. C. P. And the question usually presented on appeal where an amendment has, or has not, been allowed is whether such discretion was abused. We have repeatedly held the allowance of an amendment, especially one like this, is the rule, its denial the exception.

 We have also declined to decide whether there was an abuse of discretion in disallowing an amendment where, as here, a law action is reversed and remanded on another ground since, upon the remand, the trial court will have the same discretion to permit an amendment as if the case had not been tried. The presumption is that after the remand such discretion will not be abused. We have so held in a long line of decisions. Webber v. Larimer Hdwe. Co., 234 Iowa 1381, 1389, 15 N.W.2d 286, 290, and citations; Williams v. Stroh Plbg. & Elec., Inc., 250 Iowa 599, 606, 607, 94 N.W.2d 750, 755, 756, 82 A. L. R.2d 465, 473, and citations; Bashford v. Slater, 250 Iowa 857, 864, 96 N.W.2d 904, 908, 909 ("* * * we may assume the issues will then be clearly resolved, * * *.").

Our problem is not the usual one, however. The trial court did not disallow the second paragraph of the amendment. He changed it and, as so changed, permitted it to stand. The only

apparent basis for the change is that the court felt defendant, in using the ultrasonic machine, should be held to exercise such care as a person skilled in such use is required to exercise, not the degree of care and skill usually exercised by "M.D.s" in Council Bluffs, as the amendment contemplates. The court may have had in mind, what the evidence shows, that ultrasonic treatments are frequently administered by nurses, therapists or physicians' aids under the latter's direction and supervision. We are not prepared to hold such common practice would necessarily be illegal or amount to negligence. If this is what the trial court had in mind by changing the language of the amendment little, if any, prejudice could result to plaintiff therefrom.

Defendant tells us the standard of care the trial court announced conforms to our decision in Christensen v. Des Moines Still College, 248 Iowa 810, 817, 818, 82 N.W.2d 741, 746. There plaintiff recovered in a malpractice action from an osteopathic college for an injury inflicted by a senior student assigned to a licensed practitioner-instructor in the college. In affirming the judgment upon defendant's appeal, the opinion points out the jury was instructed the care necessary was that exercised by senior students of osteopathy at the time and place in question.

Defendant thinks this from the Christensen opinion supports the change the trial court made in plaintiff's amendment: "* * * we may observe in passing that it [instruction] was most favorable to defendant, for the law requires, we think, not only 'the average of the reasonable knowledge, skill and care ordinarily exercised by senior students of osteopathy' * * * but the exercise of that degree of care, skill and diligence used by the osteopathic profession at that time and place."

We see nothing in the Christensen opinion inconsistent with the claim made in paragraph 2 of plaintiff's amendment.

■ The general rule is that one sued for malpractice is entitled to have his treatment tested by the rules and principles of the school of medicine to which he belongs, not those of some other school. If he treats the patient with the ordinary skill and care of those of his school he is not answerable for poor results. Wheatley v. Heideman, 251 Iowa 695, 704, 706, 102 N.W.2d 343, 349, 350, and citations; Treptau v. Behrens Spa, supra, 247

Wis. 438, 20 N.W.2d 108, 113, and citations; Kelly v. Carroll, 36 Wash.2d 482, 219 P.2d 79, 19 A. L. R.2d 1174, 1182, 1183, and annotation, 1188, 1198; Annotation, 78 A. L. R. 697, 698. See also annotation, 85 A. L. R.2d 1022, 1023.

■ But this rule is not applicable here. Plaintiff does not charge defendant with malpractice in treating her back ailment by "adjustment by hand" or "other incidental adjustments." Her complaint is defendant was negligent when he went outside the practice of chiropractic and entered the field of the practice of medicine by administering ultrasonic treatments. In doing so—and it is admitted he treated plaintiff with an ultrasonic unit—he is held to the care and skill usually exercised by medical doctors. Treptau v. Behrens Spa, supra; Kelly v. Carroll, supra, and annotation, 19 A. L. R.2d 1188, 1203. See also annotation, 85 A. L. R.2d 1022, 1029.

We think paragraph 2 of the amendment, as tendered, should have been allowed. It is a good allegation of negligence. There is ample authority to support it and none to the contrary has been cited. However, we are also of the opinion that under the change the court made therein the case should have been submitted to the jury.

■ In view of the remand for a new trial we feel we should express our opinion on defendant's contention that his mere violation of Code section 151.1, as alleged in paragraph 1 of plaintiff's amendment, would not be actionable negligence without proof he failed to exercise proper care in treating plaintiff's foot and such failure caused her injury. We think this contention must be upheld. Annotation, 19 A. L. R.2d 1188, 1204, 1205. See also annotation, 57 A. L. R. 978.

III. There is substantial evidence defendant negligently failed to exercise such care in the use of the ultrasonic machine as one skilled in its use would exercise. Since, as we have held, use of such machine is part of the practice of medicine we may assume that only "M.D.s" or their assistants, who act under their supervision and direction, are so skilled.

In considering the propriety of the directed verdict of course we give the evidence for plaintiff the most favorable construction it will reasonably bear. It is equally well established

that generally questions of negligence and proximate cause are for the jury—it is only in exceptional cases they may be decided as matters of law. Rule 344(f), paragraphs 2 and 10, R. C. P., 58 I. C. A.

We have said there is ample evidence defendant burned plaintiff's foot by his use of the ultrasonic machine. We have held the fact a plaintiff is severely burned by defendant's use of an X-ray machine is some evidence in itself the treatment was improper. Shockley v. Tucker, 127 Iowa 456, 458, 103 N.W. 360; Rulison v. Victor X-ray Corp., 207 Iowa 895, 899, 223 N.W. 745, 747; Berg v. Willett, 212 Iowa 1109, 1112, 232 N.W. 821. To like effect is Hansen v. Isaak, 70 S. D. 529, 19 N.W.2d 521, 522. For other somewhat similar decisions see annotation, 41 A. L. R.2d 329, 365.

Our Rulison opinion states: "* * * if the evidence shows that the plaintiff did suffer an X-ray burn, and that this was her only exposure to an X-ray machine, such circumstance is not only admissible, as tending to prove improper use of the machine, but it is also a very persuasive one."

The present case is closely analogous to those just cited. But there is quite a little other evidence of defendant's negligence.

The only witness defendant called was Dr. Irving J. Hansmann, a regular practitioner specializing in internal medicine. He examined plaintiff evidently with a view of becoming a witness. He testified in substance that if proper care were used a sprained ankle of a diabetic could be successfully treated with an ultrasonic machine. This, together with the fact injury resulted here, is some evidence proper care and skill were not used. George v. Shannon, 92 Kan. 801, 142 P. 967, Ann. Cas. 1916B 338, 340, 341. See also Berg v. Willett and Hansen v. Isaak, cited last above.

Plaintiff testified that on each of the three occasions defendant treated her foot with this machine it was applied 15 or 20 minutes and then shut off. Doctor Hansmann said the maximum time for application of ultrasonic therapy *on a nondiabetic* would be five minutes and "the use of this machine on a diabetic for 15 or 20 minutes would be excessive." There is much evi-

dence that feet of a diabetic are more susceptible to burns than are feet of one without the disease, and greater care is required in treating a diabetic with ultrasonic equipment than is necessary with a normal patient.

A registered physical therapist—director of a therapy center in Council Bluffs—testified the duration of an ultrasonic treatment and the intensity of the heat to be used "should be" prescribed by a medical doctor. Plaintiff's "M.D.", the physical therapist at Mercy Hospital in Council Bluffs, and defendant's expert, Doctor Hansmann, each testified in substance that ultrasonic treatments were administered, if not by an M.D., only on his prescription as to duration and intensity of the heat to be applied. The hospital therapist said, "We use the machine usually from three to not over ten minutes."

After Doctor Hansmann testified as just indicated, there is this record:

"Q. Would you say the use of a doctor's prescription is the general accepted use of an ultrasound machine in your profession in this community? A. I think that's true.

"Defendant's counsel: That is objected to as irrelevant and immaterial to any issue.

"The court: Sustained."

No motion was made to strike or exclude the quoted answer. The objection was not made until after the answer was in and no reason was given for the delay. The ruling did not have the effect of striking the testimony. It remained in the record and is to be considered. Hamdorf v. Corrie, 251 Iowa 896, 903, 101 N.W.2d 836, 840; Ducummon v. Johnson, 242 Iowa 488, 496, 47 N.W.2d 231, 236; Livingstone v. Dole, 184 Iowa 1340, 1343, 167 N.W. 639. We may add we are unable to agree the question (on cross-examination) was objectionable under the issue raised by the second paragraph of plaintiff's amendment as changed by the trial court. Defendant tells us in argument the true issue is whether he departed from the standard of those qualified to prescribe and apply ultrasonic therapy. It is not claimed defendant used this machine on plaintiff pursuant to a physician's prescription.

1248

Defendant told plaintiff on October 5 he knew nothing about the machine and was just trying it out. We think it may be presumed he had not been trained in the use of such a device. The school of chiropractic he attended would hardly train students to do something outside the field of chiropractic. Doctor Hansmann testified in effect that much care is required in the use of such a machine on bony prominences like the ankle and on an older person, as well as a diabetic.

There is other evidence which strengthens plaintiff's claim defendant failed to exercise such care as one skilled in the use of such a machine would exercise. It need not be referred to. We feel enough has been summarized to indicate a jury question was raised.

IV. The jury could find the proximate cause of plaintiff's injury was defendant's failure to exercise such care as one skilled in the use of an ultrasonic machine would use. As stated twice, there is ample evidence the burns on plaintiff's foot were caused by defendant's use of the machine. We think we have pointed out substantial evidence he was negligent in using it. The observation we have frequently made applies here —the issue of proximate cause is ordinarily for the jury where there is substantial evidence of a defendant's negligence. Wilson v. Corbin, 241 Iowa 593, 604, 41 N.W.2d 702, 708, and citations; Daiker v. Martin, 250 Iowa 75, 84, 91 N.W.2d 747, 752. See also cases cited in annotation, 19 A. L. R.2d 1188, 1194–1196.— Reversed and remanded.

All JUSTICES concur except PETERSON, J., who takes no part.