WILLIAM HENSLIN v. CHARLES A. WHEATON and Others.[1]

January 8, 1904.

Nos. 13,618—(149).

**Physician—Malpractice.**

In an action against a physician and surgeon for negligence and unskillfulness in applying to plaintiff's body the device known as "Roentgen's X-Rays" for the purpose of locating a foreign substance thought to be in his lungs, it is held that the rule of liability is the same as that applied in other actions for malpractice, and one of ordinary care and prudence.

**Evidence—Same School of Medicine.**

A physician who applies the X-rays, not for medical purposes, but to locate a foreign substance in the body of his patient, is not entitled to have the question of his care and skill in applying it determined by the opinions of physicians of his own school.   Martin v. Courtney, 75 Minn. 255, distinguished.

Appeal by plaintiff from an order of the district court for Ramsey county, Orr, J., denying a motion for a new trial.   Reversed.

*S. C. Olmstead* and *Charles H. Taylor,* for appellant.

*C. D. & Thos. D. O'Brien,* for respondents.

BROWN, J.

Action to recover damages for personal injuries alleged to have been caused by the negligence and unskillfulness of defendants.   The action was dismissed on the trial in the court below, and the plaintiff appealed from an order denying a new trial.

[1] Reported in 97 N. W. 882.

The facts are as follows: Plaintiff, under the impression that he had inhaled into his lungs the gold crown of one of his teeth, went to defendants, who are practicing physicians and surgeons, for medical advice and treatment. He informed one of defendants of his trouble—the fact that he had inhaled the gold crown—and was anxious to know what could be done to relieve him. For the purpose of locating the crown, if anywhere in his lungs, defendants applied the X-rays to his person. He was exposed to this device on several different occasions, one or two skiagraphs being taken; but the efforts to locate the crown by this method were unsuccessful. Plaintiff suffered no particular inconvenience from the fact that it was in his lungs, but he was anxious to have it located, and, if possible, removed. About two weeks subsequent to the application of the X-rays to his person there appeared upon his back what is termed an "X-ray burn." This was very painful, and did not immediately yield to medical treatment, or become wholly healed for considerable time, though it appears to have been wholly healed at the time of the trial of the action. On the theory and claim that defendants were negligent and unskillful in applying the X-rays to his person, this action was brought to recover damages.

This is the first case to come before us involving alleged negligence on the part of physicians in applying the recently discovered X-rays, and no rule of care in such cases has been laid down. But there can be no doubt that the rule applicable to the care and skill required of physicians toward their patients in other cases applies. That rule was stated in Martin v. Courtney, 87 Minn. 197, 91 N. W. 487, in the following language: "The legal obligation of the physician to his patient, where his conduct is questioned in an action of this character, demands of him no more than the exercise of such reasonable care and skill as is usually given by physicians or surgeons in good standing." The rule is one of ordinary care and prudence, and the question presented in the case at bar is whether the evidence received and that offered on the trial tended to show a failure on the part of defendants to exercise such care.

Plaintiff testified in support of the allegations of the complaint that the exposure of his person to the X-rays was made for too long a period of time, and that the tube or bulb through which the rays are generated was placed too close to his body. He testified to the num-

ber of times the X-rays were applied, and the length of time—from thirty to forty minutes on each occasion—and that the tube of the apparatus was placed within two inches of his person in each instance, except one.

Plaintiff then called Prof. Freeman as an expert witness, who testified that he was familiar with electricity, and had been from childhood; that he had taught it for a number of years; that he knew the X-ray and its properties; that he had been a professor of physical sciences at the State Normal School at Winona; that he had used the X-ray more or less since its discovery by Roentgen in demonstrations and diagnoses, and in lectures before classes in physics and classes in the study of therapeutical methods. He disclosed that he was thoroughly familiar with the apparatus, and had used both the coil and static machines, and had examined frequently the style of machine used by defendants. In short, the foundation was fully laid for his opinion as an expert touching the questions involved in the case. Plaintiff sought to prove by him that it was negligence to apply the X-ray to the person of a patient with the tube only two inches from the body; that the effect of the X-ray upon the body, and the extent or degree the flesh would be affected, is determined by the nearness of the exposure; and also whether the nearness of the exposure was likely to cause an X-ray burn, when, if farther removed, such would not result. In short, the testimony of this witness, if received, would tend to show unskillfulness and negligence on the part of defendants.

Defendants objected to all such evidence on the ground that the witness was not a physician and surgeon, and was incompetent to testify against them, under the rule announced in the case of Martin v. Courtney, 75 Minn. 255, 77 N. W. 813, which objection the court sustained. The ruling is assigned as error. It was held in that case that, in an action against a physician or surgeon for malpractice—unskillfulness in treatment being charged—the physician was entitled to have the propriety of his treatment tested by physicians of the same school; that, if a physician of the allopathic school be sued for malpractice, the question whether his treatment was unskillful should be tested by the rules and methods of that school, and the testimony of a physician of the homeopathic school would be incompetent. The trial court applied that rule to the case at bar, and in doing so we are of opinion that it

erred.  The application of the X-ray to plaintiff was not for the purpose of treating any disease or ailment from which he suffered, but for the purpose of locating, if possible, a foreign substance thought to be in his lungs.  While it, perhaps, may in some instances be used as a remedial agent, it was not so employed in this case.

The so-called X-rays, discovered by Roentgen, have been recognized and known to scientists, both in and out of the medical profession, for some eight years.  During this time the apparatus for the generation of the X-rays, together with the fluoroscope, has been used very generally by electricians, professors of physics, skiagraphers, physicians, and others, for experimental and demonstrative purposes.  It is a scientific and mechanical appliance, the operation of which is the same in the hands of the college professor, or the physician of the allopathic, homeopathic, or any other school of medicine.  It may be applied by any person possessing the requisite scientific knowledge of its properties, and there would seem to be no reason why its application to the human body may not be explained by any person who understands it.  The rule in the Courtney case can therefore have no application to the case at bar.  It might apply, did it appear that the application of the X-rays to plaintiff's person was for medical purposes, and not for the scientific purpose of discovering the presence of a foreign substance in his lungs.

It was conceded by the defendants that the X-ray burn frequently follows an application of the rays to the body, but that some are not susceptible to its influence, while others are; that the burn is likely to follow, regardless of the distance the apparatus is placed from the person of the patient; and that it is impossible to determine in advance who are and who are not susceptible to injurious effects.  Whether this is so, or not, we are not permitted to determine at this time.  The question was one of fact, or perhaps might have been, had the case been fully tried, and for the jury to determine.

For the error in excluding the evidence of witness Freeman and dismissing the action, the order appealed from must be reversed.  It is so ordered.