MONTE PURYEAR v. DR. G. G. PORTER, ET AL

No. A-4238. Decided December 2, 1953.
Rehearing overruled January 13, 1954.
Judgment set aside and new judgment entered February 10, 1954.
(262 S.W. 2d Series 933)
(264 S.W. 2d Series 689)

*Bob Huff* and *J. H. Splawn, Jr.,* both of Lubbock, for petitioners.

The Court of Civil Appeals erred in reversing the judgment of the trial court and in holding that there was no evidence to support the jury's finding that the negligent act of Baker in injecting the needle in plaintiff's spinal cord was the proximate cause of plaintiff's injuries. Gulf C. & S. F. Ry. Co. v. Bouchillon,

186 S.W. 2d 1006; Lackey v. Moffett, 172 S.W. 2d 715; Renfro Drug Co. v. Lewis, 149 Texas 508, 235 S.W. 2d 609.

*Trout & Jones, Klett, Bean & Evans and E. L. Klett,* all of Lubbock, for respondents.

The evidence is insufficient to support a finding that defendant by injecting hypodemic needle in plaintiff's spinal cord at a location above the level of the first lumbar vertebra was negligent and that such act was the proximate cause of plaintiff's injuries. Bowles v. Bourdon, 148 Texas 1, 219 S.W. 2d 782; Galveston H. & S. A. Ry. Co. v. Powers, 101 Texas 161, 105 S.W. 2d 913; Hilgenberg v. Mercer, 145 Texas 437, 198 S.W. 2d 94.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Monte Puryear, as plaintiff, sought by his suit against Dr. G. G. Porter and Dr. J. A. Finer, osteopathic physicians, and T. W. Baker, the three defendants, to recover damages for personal injuries growing out of the alleged negligence of Baker in injecting a spinal anesthetic into plaintiff's spine somewhere between the first lumbar and sixth dorsal vertebrae. In response to jury findings on special issues the trial court rendered judgment for plaintiff for the sum of $134,800.00. The Court of Civil Appeals reversed the judgment and remanded the cause for retrial. 258 S.W. 2d 182.

Both the plaintiff and the defendants, Porter and Finer, applied to this court for writ of error and both applications were granted.

The major complaint of all parties relates to the holding of the Court of Civil Appeals that there is no evidence to support the jury's finding that the negligent administration of the spinal anesthetic was a proximate cause of plaintiff's injuries. A careful examination of the record as it comes to us reveals that we cannot, on this appeal, give either the plaintiff or the defendants the relief they seek from that holding, as will be manifest.

■ The contention of the plaintiff is that there is ample evidence to support the jury's finding on the proximate cause issue and that we should therefore reverse the judgment of the Court of Civil Appeals and affirm the trial court's judgment in his favor. But we cannot do this because the Court of Civil Appeals also held, on a point of error properly before it, that the jury's answer to the issue was contrary to the overwhelming weight of the evidence and the cause was remanded for retrial. It is well settled

that the ruling of a Court of Civil Appeals on a question of insufficient evidence, as distinguished from a question of no evidence, is final, and that we have no jurisdiction to review it. Electric Express & Baggage Co. v. Ablon, 110 Texas 235, 218 S.W. 1030; King v. King, 150 Texas 662, 244 S.W. 2d 660; Art. V., Sec. 6, Constitution of Texas. This disposes of the only question presented by plaintiff's application for writ of error.

■ The contention of the defendants, Porter and Finer, is that there is no evidence to support the jury's finding on the proximate cause issue and that they were entitled to have the trial court's judgment reversed and judgment rendered in their favor. They thus contend that the Court of Civil Appeals erred in remanding the cause for retrial. But the concluding paragraph of the Court of Civil Appeal's opinion on motion for rehearing (unpublished) shows that the court remanded the cause rather than render judgment for the defendants because it felt that the evidence had not been fully developed and in order to better subserve the ends of justice, bringing the case clearly within the rule announced in London Terrace, Inc. v. McAlister, 142 Texas 608, 180 S.W. 2d 619, 621, a rule applicable alike to the powers of the Supreme Court and of the Courts of Civil Appeals. Williams v. Safety Casualty Co., 129 Texas 184, 102 S.W. 2d 178. See also Dahlberg v. Holden, 150 Texas 179, 238 S.W. 2d 699; Benoit v. Wilson, 150 Texas 273, 239 S.W. 2d 792; Eaton v. R. B. George Investments, Inc., 152 Texas 523, 260 S.W. 2d 587; Coleman v. Littles, Tex. Civ. App., 214 S.W. 2d 678. Thus it appears that even if we were in agreement with the defendants as to the state of the evidence, or the absence of it, we would be reluctant to disturb the judgment of the Court of Civil Appeals.

Since the case is before us and must be retried, and since the matters discussed by the parties and by the Court of Civil Appeals in connection with the proximate cause issue are basic to the case and undoubtedly will arise again in the event of a retrial, we deem it not amiss to review the holding of the Court of Civil Appeals that there was no evidence to support the finding of proximate cause.

The defendants' contention that there is no competent evidence to support the jury's finding of proximate cause raises incidentally the question of the right of doctors of the medical school in the field of the healing arts to give opinion testimony in a malpractice suit against doctors of the osteopathic school.

■ The plaintiff's proof of proximate cause rests finally upon

opinion testimony of doctors of medicine. This testimony was admitted over the defendants' objections. The Court of Civil Appeals held the testimony to be incompetent. In support of their position that the holding of the Court of Civil Appeals was correct, the defendants rely on the recent case of Bowles v. Bourdon, 148 Texas 1, 219 S.W. 2d 779, 782, in which this court said: "It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves *by a doctor of the same school of practice* as the defendant (1) that the diagnosis or treatment complained of was such as to constitute negligence, and (2) that it was a proximate cause of the patient's injuries."

Undoubtedly the quotation correctly states the recognized general rule, the basis for which is said to be that "when a patient selects one of the several recognized schools of treatment, he thereby adopts and accepts the kind of treatment common to that school; and the care, skill and diligence with which he is treated, when that becomes a question in the courts of this state, must be tested by the evidence of those who are trained and skilled in that particular school of treatment." Nelson v. Dahl, 174 Minn. 574, 219 N.W. 941, 942. But some of the courts of other states recognize that the general rule of exclusion is subject to certain qualifications and exceptions, into at least two of which the facts bring this case, to wit: (1) Where the particular subject of inquiry is common to and equally recognized and developed in all fields of practice, Treptau v. Behrens Spa, Inc., 247 Wis. 438, 20 N.W. 2d 108; Wemmett v. Mount, 134 Ore. 305, 292 Pac. 93; Foster v. Thornton, 125 Fla. 699, 170 So. 459, and (2) where the subject of inquiry relates to the manner of use of electrical or mechanical appliances in common use in all fields of practice, Wemmett v. Mount, supra; Holt v. Ten Broeck, 134 Minn. 458, 159 N.W. 1073, Ann Cas. 1918E, 256; Henslin v. Wheaton, 91 Minn. 219, 97 N.W. 882, 64 L.R.A. 126; Shockley v. Tucker, 127 Iowa 456, 103 N.W. 360; Dorr, Gray & Johnston v. Headstream, 173 Ark. 1104, 295 S.W. 16; 78 A.L.R. 697, 707; Giles v. Tyson, Tex. Civ. App., 13 S.W. 2d 452. On the subject generally, see 41 Am. Jur., Physicians and Surgeons, § 130, P. 243. We believe these qualifications of the general rule are sound.

■ The proof in this record shows that the witnesses representing both the medical and the osteopathic schools were trained in the use of a spinal needle in administering a spinal anesthetic. Both were taught and were in agreement that it is highly dangerous to give the anesthetic above the first lumbar vertebra. Under the facts of this case it would be utterly unrealistic to hold

that the osteopathic witnesses were competent to give opinion testimony but that the medical witnesses were incompetent to give opinion testimony on the proper method of administering a spinal anesthetic and on the results that could and probably did in fact flow from an improper administration thereof. We therefore hold that the testimony of the medical witnesses offered by the plaintiff was competent evidence and should be considered in deciding whether the verdict of the jury on the issue of proximate cause is supported by evidence.

The plaintiff pleaded that the defendants "improperly administered the spinal anesthetic to this plaintiff in that the hypodermic needle, approximately four inches in length, was inserted or pushed into plaintiff's spine somewhere between the first lumbar and sixth dorsal vertebrae, thereby causing a rupture and contusion of the spinal cord, resulting in total paralysis of plaintiff's lower extremities."

In answer to special issues the jury found that Baker injected "a spinal needle into plaintiff's spinal cord or canal at a location above the level of the first lumbar vertebra" and that such act was negligent and a proximate cause of plaintiff's injury. The Court of Civil Appeals held that the evidence was ample to sustain the findings that the act was committed and that it was negligence, and those holdings are not questioned here by the defendants.

The theory on which the Court of Civil Appeals reached its conclusion that there was no evidence of proximate cause, as we understand the opinion, is this: All of the osteopathic and medical testimony is to the effect that plaintiff's paralysis was caused by a hemorrhage, rather than by a rupture of the spinal cord by the injection of the spinal needle into the spinal cord or canal as alleged by the plaintiff and found by the jury. In this connection, the Court of Civil Appeals, after summarizing and analyzing the expert testimony, both medical and osteopathic, said: (258 S.W. 2d 188) "All such medical testimony not only wholly supports the theory and issue of a hemorrhage of the blood vessels and destruction of the cord thereby and resultant paralysis but such medical testimony also directly refutes the issue that the injection of the needle into the spinal cord or canal would proximately cause the paralysis of the appellee."

■ The vital inquiry in any case involving proximate cause is whether the negligent act set in motion a natural and unbroken chain of events that led directly and proximately to a reasonably

foreseeable injury or result. If so, it is immaterial that the actual injury was done by the last event in the series. Phoenix Ref. Co. v. Tips, 125 Texas 69, 81 S.W. 2d 60, 61; Providence Washington Ins. Co. v. Profitt, 150 Texas 207, 239 S.W. 2d 379, 382.

The osteopathic and medical witnesses agreed that it is dangerous to give a spinal anesthetic above the first lumbar vertebra because of the presence there of the spinal cord. The records of the hospital and the testimony of the plaintiff show beyond dispute that immediately after the spinal injection the plaintiff began to suffer intense pain, and within a short period of time was in a semi-comatose state and his body and organs were paralyzed from a point level with the point of injection downward. A test made about a week later disclosed the presence of blood in the spinal fluid.

With this background of facts, Dr. J. D. Barry testified that if a needle were injected into the spinal cord between the ninth and tenth dorsal vertebrae (the place identified as the point of injection) "you would have a puncture or a rupture of the spinal cord by the needle with subsequent hemorrhage." He explained that a needle put into the spinal cord would puncture a blood vessel causing a hemorrhage, and that "as the hemorrhage increases it expands the cord and ultimately causes destruction of the cord, *which he had.*" He further testified that if the needle hit the cord "it would give rise to pain immediately," and, based on the testimony that plaintiff had suffered immediate pain, expressed the opinion that his spinal cord had been hit by the needle. In answer to a hypothetical question of what caused the plaintiff's condition he answered: "He has a transverse myelitis of the cord, and a hematomyelia, which means blood in the central canal of the spinal cord"; and in answer to a question as to what caused the blood in the spinal fluid, he gave it as his opinion that "he had a perforation of the cord with subsequent hemorrhage. Blood escaped into the spinal fluid."

Dr. W. A. V. Cash testified that he did not think it would be possible to penetrate the spinal cord with a needle without striking blood vessels or arteries and that might cause hematomyelia (a hemorrhage into the white substance of the cord) which in turn would "cause transverse myelitis." In answer to a hypothetical question he testified that it was his opinion, based on reasonable medical certainty, that the plaintiff's condition was "caused by a traumatic entry to the cord, followed by hemorrhage into the cord, which caused the destruction of the cord at that level."

He further testified that a hemorrhage in the dorsal area, in his opinion, "would cause or could cause a permanent paralysis," and that he didn't think it made "a bit of difference" whether the hemorrhage occurred inside or outside the cord "as long as the hemorrhage is massive enough."

Dr. R. H. Tull testified that his examination showed the plaintiff to be paralyzed "from about an inch and a half in front of the nipples extending into the back about the level of the seventh and eighth dorsal vertebrae and extending from there * * * to the bottom of his feet"; that "if the hemorrhage was severe enough, it would give you a transverse myelitis; it would give you enough hemorrhage there to give enough pressure to cut off the cord entirely" which would paralyze the body "below that level." A hypothetical question embracing the facts, including the paralyzed condition of the plaintiff, was propounded to Dr. Tull, terminating as follows: "What, Doctor, in your opinion, caused this condition in this boy?", to which he answered: "The injection."

The facts detailed—injection of the needle in the upper back, presence of the spinal cord at the point of injection, blood in the spinal fluid, immediate pain, final paralysis from the point of injection downward—furnish strong circumstantial evidence that the needle entered and ruptured a blood vessel in the spinal cord setting off a hemorrhage which caused a transverse myelitis destruction of the cord) and the ensuing paralysis. These circumstances are bolstered by the opinion testimony of the medical witnesses—necessary to the plaintiff's case—that that is what happened.

In summation, the evidence detailed would constitute some support for a finding that the negligent injection of the spinal needle into the plaintiff's spinal cord or canal set in motion a natural and unbroken chain of events—rupture of a blood vessel, hemorrhage, destruction of the spinal cord—that led directly to the plaintiff's paralysis, a reasonably foreseeable result. It therefore would constitute some support for the jury's finding that the injection of "a spinal needle into the plaintiff's spinal cord or canal at a level above the first lumbar vertebra" was a proximate cause of the plaintiff's injury. It is improper to break up the proximate cause issue into segments or subsidiary issues. Pickens v. Harrison, 151 Texas 562, 252 S.W. 2d 575, 579-581.

■ The defendants assert that the Court of Civil Appeals should have rendered judgment for Dr. Porter in any event because

there was a jury finding that the anesthetist, Baker, was acting under the direction and control of Dr. Finer in giving the spinal anesthetic and the evidence shows as a matter of law, notwithstanding a jury finding to the contrary, that Drs. Porter and Finer were not engaged in a joint venture in the treatment of the plaintiff. It is particularly urged that there is no evidence that the parties were to share losses, if any, it being asserted that such evidence was necessary to a joint-venture relationship.

The record reveals that Dr. Porter, who was the doctor of plaintiff's selection, referred him to Dr. Finer for an operation deemed by them to be necessary to a correction of plaintiff's ailment. Dr. Porter was the owner of the hospital where the operation was to be performed and Dr. Finer was the resident surgeon in the hospital. As was his custom in his relationship with Dr. Finer, Dr. Porter was to furnish all hospital and surgical facilities necessary to the operation and to the hospitalization of the plaintiff, including the services of the anesthetist, Baker, who was Porter's employee, paid on a monthly basis. Dr. Finer was to furnish his services as a surgeon and perform the operation for which he was to charge the plaintiff a fixed fee to be divided equally between the two if and when the same was paid. If the fee was not paid neither would receive anything.

It is said that a joint adventure is a limited or special partnership engaged in the joint prosecution of a particular transaction for mutual benefit or profit. Holcombe v. Lorino, 124 Texas 446, 79 S.W. 2d 307, 310.

It does not follow from the fact that Dr. Finer paid no part of the hospital expenses and attendants' salaries that he was to share no part of the losses. If the fee was paid, both would share in the compensation arising out of the venture. If it was not paid, both would share in the losses—Dr. Porter would lose the value of the use of his facilities and employees' services and Dr. Finer would lose the value of his services, time and labor. The arrangement was not unlike any joint venture to which one party contributes the capital and the other contributes his services. Thompson v. Duncan, Tex. Com. App., 44 S.W. 2d 904. The Court of Civil Appeals did not err in overruling Dr. Porter's point of error on this phase of the case.

In view of the holding by the Court of Civil Appeals on the point of error attacking the sufficiency of the evidence we have no alternative but to affirm its judgment.

The judgment of the Court of Civil Appeals is accordingly affirmed.

Opinion delivered December 2, 1953.

Rehearing overruled January 13, 1954.

### ON SECOND MOTION FOR REHEARING

MR. JUSTICE CALVERT delivered the opinion of the Court.

Our judgment affirming the judgment of the Court of Civil Appeals which remanded this cause to the trial court for retrial was entered on December 2, 1953. Motions of both parties for rehearing were overruled on January 13th of this year without written opinion. Anti page 82. 262 S.W. 2d 933.

The Court of Civil Appeals' reversal of the trial court's judgment for plaintiff was permitted by us to stand on the sole ground that the evidence was insufficient to support the jury finding that the defendants' negligence was a proximate cause of plaintiff's injuries.

By his second motion for rehearing, and relying on the cases of Woods v. Townsend, 144 Texas 594, 192 S.W. 2d 884; Corzelius v. Oliver, 148 Texas 76, 220 S.W. 2d 632, and Hale v. Texas Employers' Ins. Assn., 150 Texas 215, 239 S.W. 2d 608, the plaintiff suggests for the first time that we should have reversed the judgment of the Court of Civil Appeals and remanded the cause to that Court for further consideration. In his application for writ of error and his first motion for rehearing he prayed only that the judgment of the Court of Civil Appeals be reversed and the judgment of the trial court be affirmed.

■ The cases cited undoubtedly stand for the proposition that while the judgment of a court of civil appeals is final and conclusive on a question of the sufficieny of the evidence to support a verdict, yet when it appears that its ruling on that question was based on a conception of the law held by this Court to be erroneous, this Court should remand the cause to that Court for consideration of the weight of the evidence under proper rules of law.

■ In this case we held that in passing on the sufficiency of the evidence the Court of Civil Appeals erred in its conception of the law in two respects: first, in holding the testimony of doctors of

medicine to be incompetent on the issue of proximate cause, and secondly, in holding that the testimony of such doctors had no relevancy or materiality on the issue of proximate cause as that issue was pleaded by the plaintiff and submitted to the jury.

If the first error were the only one involved we would not alter the judgment heretofore rendered for the Court of Civil Appeals specifically held that even considering the testimony of the doctors of medicine there was still not sufficient evidence to support the jury finding. Thus it appears that that Court would have reached the same conclusion and result if it had regarded the medical testimony as competent, and we would regard the matter as foreclosed.

On the other hand, we cannot say that the Court of Civil Appeals would have reached the same result it did reach if it had had before it our holding that the testimony of the doctors of medicine, as set out in our opinion, was relevant to and material on the issue of proximate cause as pleaded and submitted. For that reason we have concluded that our former judgment should be set aside and judgment be rendered reversing the judgment of the Court of Civil Appeals and remanding the cause to that Court for further consideration of the question of the sufficiency of the evidence to support the jury's answer to the proximate cause issue.

Certain expressions in the opinion of the Court of Civil Appeals indicate that it was inclined to discount the cogency and probative force of some of the testimony of the doctors of medicine because of answers made to questions propounded on cross-examination. Our action in remanding the cause for further consideration is not to be regarded as an effort on the part of this Court to invade the exclusive jurisdiction of the Court of Civil Appeals to weigh the evidence and to determine if the jury finding on proximate cause is, in its opinion, so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

The defendants have also filed a second motion for rehearing but it contains nothing new and is overruled.

Our former judgment is set aside and the judgment of the Court of Civil Appeals is reversed and the cause is remanded to that Court for further consideration.

Opinion delivered February 10, 1954.