Patricia LEE et al.

v.

J. H. MILES et al.

Civ. A. No. 4–1241.

United States District Court, N. D. Texas, Fort Worth Division.

Sept. 1, 1970.

---

Vecchio & Vecchio, Arlington, Tex., for plaintiffs.

Homa S. Hill, Fort Worth, Tex., for defendant J. H. Miles.

W. Richard Bernays, Dallas, Tex., for defendant Trinity Osteopathic Medical Center, Inc. and David Norris.

## ORDER ON REMITTITUR

BREWSTER, District Judge.

This malpractice action against an osteopathic physician seeks damages for personal injuries alleged to have been suffered by the plaintiff, Patricia Lee, as a result of negligence of the defendant, Dr. Miles, in performing an operation on her. A jury has returned a verdict awarding the plaintiffs the sum of $22,500.00 plus medical and hospital expense totalling $1846.75.[1] The Court is of the opinion that the verdict is excessive and that a new trial should be granted unless the plaintiffs file a re-

mittitur under the conditions and within the time hereinafter provided.

■ It is the settled law in Texas that there can be no recovery in a malpractice action against a physician unless it is proved by a medical expert of the same school of practice[2] as the defendant that plaintiff suffered personal injuries as a proximate result of the defendant's professional negligence. Bowles v. Bourdon, 148 Tex. 1, 219 S. W.2d 779, 13 A.L.R.2d 1; Puryear v. Porter, 153 Tex. 82, 262 S.W.2d 933, on rehearing, 153 Tex. 82, 264 S.W.2d 689; Hart v. Van Zandt, Tex.S.Ct., 399 S.W. 2d 791. To show the reason for the rule, the Supreme Court of Texas, in the *Bowles* case, quoted the following from an opinion by Chief Justice Taft, sitting as a circuit judge in Ohio:

"When a case concerns the highly specialized art of treating (disease), with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence. There can be no other guide, and, where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury. * * *" Ewing v. Goode, 6 Cir., 78 F. 442, 444.

This rule contemplates a bona fide, not a phony expert witness. It would be meaningless otherwise.

Apparently, the plaintiffs could not find a medical expert witness in the whole state of Texas who would support their case. They attempted to meet their obligation under this rule by importing from Pueblo, Colorado an itinerant jack-of-all-trades. There is no more resemblance between this witness and

---

1. There are two other defendants. The jury found in their favor and they are entitled to judgment. This order does not affect their position in the case.

2. "The same school of practice" has been liberally construed. Puryear v. Porter, 153 Tex. 82, 262 S.W.2d 933, on re-

hearing, 153 Tex. 82, 264 S.W.2d 689; Hart v. Van Zandt, Tex.S.Ct., 399 S.W. 2d 791; Miles v. Meadows, Tex.Civ.App., 309 S.W.2d 284, no writ history; Welch v. Shaver, Tex.Civ.App., 351 S.W.2d 588, err. ref. n. r. e.; Annotations, 81 A.L.R. 2d 597, 85 A.L.R.2d 1022, 145 A.L.R.2d 5, 46.

the type of expert contemplated by the above cited authorities than there is between a tiger lily and a tiger.

This witness, Lewis Guenther, was licensed in 1959 to practice in Texas as an osteopathic physician. In 1969, he moved to Pueblo, Colorado, where he now resides.

During the ten years he was in Texas, the witness never stayed in any place or with any business or profession very long. He was constantly jumping from pillar to post both as to occupation and location. In that period, he tried his hand not only at osteopathy, but at the practice of law [3], accounting, fitting of eye glasses, management of a local dispensing office for Lee Optical Company, lecturing at a chiropractic school, preparation of income tax returns, and stenotype reporting. He is now studying to be a coroner. On occasions, he was working at several of such occupations at the same time, usually in an "office" in the residential quarters he then happened to be occupying. He was not a success at any of them. He devoted his efforts to those occupations in cities and towns from one end of Texas to the other. Some of those places where he stopped long enough to set up a residential office were Houston, El Paso, Corpus Christi, Baytown, Mesquite, Galveston, Haltom City, Bellaire, Big Spring, Galena Park, Rockport and Lipan. His stays in most of them were usually short, and he moved in and out of some of the towns more than one time. He wound up his ten years in Texas with his osteopathic table in a room in his residential quarters in Lipan, Texas, a rural community of about three hundred people.

After being unable to make a success in Texas of any of his many occupations, or of any combination of them, he moved to Pueblo, Colorado, where he is examining eyes for glasses [4] while studying to be a coroner. The sign on the outside of the building where he does eye examinations says, "Eyes Examined, Lewis Guenther, D.O." even though he has never been licensed to practice osteopathy in Colorado.

The witness has never been a member of the staff of any hospital, osteopathic or otherwise. He has never had an office for practice of osteopathy outside a room in his living quarters, wherever he happened to be at the time. The type of his practice of osteopathy appears to have been very limited. He admitted that on the few occasions when sick people happened to come to him as late as the short period he was practicing in Lipan, he sent them twenty miles away to an osteopath in Granbury, Texas for treatment. Even though he gave testimony as an expert on the type of operation involved in this case, he had never performed or seen one. Except for one operation [5] he had witnessed recently during his study to become a coroner, he had not even seen an operation of any kind in seven years. If he had ever done anything more than give rubdowns during the time of his so-called practice, he did not mention it.

The growth of malpractice litigation has opened a new possibility to this transient man of many occupations. His smattering of knowledge of osteopathy and law gives him a conception of how to criticize and second guess the work of a practicing physician and how to tell it so that it will be significant. He comes

---

3. He studied law at night school after he got his license as an osteopath. He practiced law for only a few months and quit it because he could not make any money at it. It was during his stint at law practice that he met counsel for the plaintiffs. He was officing with some lawyers in the same building where they were located.

4. The skill required for the kind of work the witness does in this connection is indicated by the fact that he said he had been doing it since he was a sophomore in osteopathic college at Kirksville, Missouri.

5. The evidence fails to show whether or not this was just an autopsy.

to advocate from the witness stand. This is the second time in recent months that he has interrupted his study in Colorado to become a coroner to travel to distant places in Texas for the purpose of testifying as an expert witness for the plaintiff in a medical malpractice action. The lawyers for the plaintiff in each of those cases are the same. It would be a miscarriage of justice to permit an award of damages based upon his testimony to stand.

The Court is of the opinion that a recovery of $7,500.00, plus the doctor, hospital and medical expenses found by the jury in answer to Question No. 9 can be justified on legitimate testimony. Dr. Graham's testimony will support that amount to the extent that expert medical evidence is required. Unless the plaintiffs file a remittitur, on or before September 8, 1970, of all amounts over and above the sums just specified and agree to the conditions herein set out, a new trial will be granted as to the portion of their suit against the defendant, Dr. Miles. The item of $350.00 found in Question No. 9 to be the reasonable charge for the medical services of Dr. Miles will be off-set by the claim of Dr. Miles against the plaintiffs for that amount, as they have never paid him. Likewise, the other amounts for hospital and doctor's expenses will be allowed for the use and benefit of Dr. Graham and the two hospitals named in Question No. 9, and will be paid into the registry of the court for transmittal directly to them. If the plaintiffs file, on or before September 8, 1970, a remittitur as above set out, with agreement that the items covered by Question No. 9 be handled as above provided, judgment will be entered accordingly. Otherwise, a new trial will be ordered as between the plaintiffs and the defendant Miles.

Judgment will be entered for the other defendants in any event.

As between the plaintiffs and the defendant Miles, the costs will be taxed against that defendant. As between the plaintiffs and the other defendants, the costs will be taxed against the plaintiffs.