Occie EMANUEL, Appellant,

v.

Dr. Robert J. BACON et al., Appellees.

No. 17888.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 26, 1981.

Rehearing Denied March 11, 1981.

John H. Holloway, Houston, for appellant.

Steve Peery, Andrews, Kurth, Campbell & Jones, Kenneth Tekell, Tekell, Book & Matthews, Houston, for appellees.

Before COLEMAN, C. J., and PEDEN and SMITH, JJ.

PEDEN, Justice.

Occie Emanuel appeals from a directed verdict in his medical malpractice suit against Drs. Robert J. Bacon, Cecil Glen Harold, and Robert A. Grummon. The motions for directed verdict asserted that Emanuel failed to establish a standard of medical care, breach of such standard or other negligence, and proximate cause of any damage to the plaintiff.

Mr. Emanuel testified that on March 28, 1973, after experiencing abdominal pain for two or three days, he went to see Dr. Bacon. Dr. Bacon testified that his examination of Emanuel was made on March 30. He said he made a differential diagnosis of gastritis or pyloris spasm, prescribed anti-acid and anti-spasmodic medication, and sent Emanuel home with directions to stay off his feet. Plaintiff says his pain continued to worsen, and he was admitted to a hospital around 6 a.m. on March 31, where appendicitis was diagnosed. Dr. Harold removed Emanuel's appendix later that day and noted that it had perforated and his abdomen was infected. On April 13, the surgical wound broke open, so Emanuel was not discharged from the hospital until April 20th. During the three months following his appendectomy, appellant developed an incisional hernia, which was surgically repaired in August of 1973 by Dr. Grummon; in the process, a section of the plaintiff's intestine was injured and was removed. Mr. Emanuel was released from that hospital stay on August 29, readmitted six days later for treatment of complications, and finally discharged on September 6, 1973.

In his four points of error Emanuel says that it was improper for the trial court to grant each of the defendant doctors' motions for instructed verdict because the evidence raised fact issues as to whether he suffered damage as a proximate result of the negligent acts of each of them. We reverse and remand as to Dr. Bacon; we affirm the judgment as to Drs. Harold and Grummon.

In determining whether the trial court committed error by instructing a verdict, we consider the testimony in the light most favorable to the non-moving party. Conflicts in the testimony must be disregarded, and every intendment reasonably deducible from the evidence must be indulged in favor of that party and against the verdict. *Anglin v. Cisco Mortgage Loan Co.*, 135 Tex. 188, 141 S.W.2d 935, 938 (1940). This is not to say, however, that the law requires an appellate court to consider as an admission one isolated answer of an expert witness where the absolute contrary clearly appears from other questions and answers in the context. *See, e. g., Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779, 786 (1949).

In medical malpractice cases the plaintiff must establish by proof from a doctor of the same school of practice as the defendant that the patient's injuries were proximately caused by the defendant's treatment of the patient and that such treatment constituted negligence. *Bowles v. Bourdon, supra; supra, See also Porter v. Puryear*, 153 Tex. 82, 262 S.W.2d 933 (1953), judmt. set aside on other grounds, 153 Tex. 82, 264 S.W.2d 689 (1954), *Wilson v. Scott*, 412 S.W.2d 299 (Tex.1967); *Webb v. Jorns*, 488 S.W.2d 407 (Tex.1972).

Appellant first urges that the trial court erred in granting Dr. Robert Bacon's motion for instructed verdict because the pleadings and the evidence raised fact issues of negligence and proximate cause as to whether Dr. Bacon had adhered to accepted standards of medical care in failing to diagnose appendicitis on his first examination of Emanuel late in March of 1973. Dr. Bacon's position is that there was no evidence of negligent failure on his part to diagnose appendicitis and no evidence that such failure, if any, was a proximate cause of injury to the appellant.

As to proof of the standard of medical care in diagnosing appendicitis, we first review the responses of Dr. Bacon when he was asked about a classic picture of appendicitis, "the textbook teachings": The first indication of appendicitis is pain, possibly around the navel, later shifting to the right lower quadrant of the abdomen. Temperature may be normal or low grade. Rebound tenderness can be, but is not always, related to appendicitis. One would expect the white blood cell count to be elevated. If deep palpation over the left side of the abdomen does not elicit severe pain but palpation over the appendix area does produce severe pain, this should be suggestive of appendicitis—or of peritoneal irritation. Rigidity of the muscles in the abdomen does not necessarily mean that the patient has appendicitis.

Dr. Bacon testified further that in 1973 a physician in this community exercising ordinary care in diagnosing appendicitis in a hypothetical 39 year old male with a history of some abdominal pain would take the following steps: 1) get a comprehensive patient history, 2) physically examine the patient, 3) feel or palpate and listen to the entire abdomen, 4) order a routine blood count to determine whether the white blood cell count is elevated, 5) order a urinalysis to determine whether there is any evidence of pus, blood, or urinary tract infection (which can mimic appendicitis), 6) order a flat plate abdominal x-ray to rule out the possibility of gall stones or kidney stones, and 7) if there was a history of prostatitis or if appendicitis was suspected, perform a rectal examination. Dr. Bacon testified that his initial differential diagnosis of appellant (gastritis vs. pyloris spasm) was based on the patient's history and physical examination and that he did not perform a rectal examination or order a blood count or abdominal x-rays.

Dr. Grummon, the surgeon who repaired appellant's incisional hernia, was in practice in Harris County, Texas, in 1973 and has performed approximately 200 appendectomies. He said that in 1973 the treatment and diagnosis of appendicitis was no different in Harris County than anywhere else. He testified that if he found pain around the navel area, pain upon pressing the stomach area, and a history of nausea in a 270 pound male patient with no prior history of abdominal complaints, and if the patient had begun experiencing those pains over the two or three day period prior to the consultation, he would have to consider the possibility of appendicitis. Dr. Grummon testified that as a medical doctor with knowledge and skills of the average practitioner in 1973, he would have to consider appendicitis as one of the differential diagnoses in a patient who had had low grade temperature and pain around the navel area, becoming increasingly worse for two or three days, had the general appearance of being ill, complained of pain upon palpation of the abdomen, generally felt sick, and was slightly nauseous. He later testified that although anything is medically possible, if is "pretty risky" to assume that a patient exhibiting the so-called classic symptoms does not have appendicitis.

Dr. Harold testified that as diagnosed and reviewed by doctors in Houston and other places, the symptoms related by a patient with appendicitis are very vague. He may just say he doesn't feel good, that he hurts in the Xiphoid area, that he feels a little hot and cold and woozy, that he hurts on the right side, that he has diarrhea, or that he is sick at his stomach and vomiting; he may have all of these symptoms or only one. One of the early symptoms of appendicitis can be pain around the navel which tends to localize in the lower right quadrant as the disease progresses. Dr. Harold said that he would have to consider appendicitis if he pressed on the lower right area of a patient's abdomen and elicited severe pain while similar pressure on the left side did not elicit the same response.

The testimony concerning what symptoms appellant exhibited and related to Dr. Bacon on March 28, 1973, is conflicting, but for purposes of this inquiry, we must assume that the appellant's version is true. He testified that when he consulted Dr. Bacon on the occasion in question he told Dr. Bacon that he was having trouble around his navel; he related to Dr. Bacon the same symptoms he told to the jury, to wit: that he had been having intermittent pain and discomfort in his lower right abdomen, below the navel, for the past two or three days; that the pain started as a dull pain around his navel then worsened to the point that the only way he could get relief from it on the day he visited Dr. Bacon was to draw his legs up to his stomach; that he was experiencing nausea "practically all the time" and vomited maybe once or twice a day over that two or three day period; that although he does not recall taking his temperature, he could tell he had fever because he was hot or warm and felt bad all the time; that when Dr. Bacon pushed on his abdomen he experienced a sharp pain in the lower right side "right in there where the appendix" was; that he drank whiskey occasionally but had said nothing to Dr. Bacon to indicate that he had been drinking it in large amounts; that he had had no previous stomach problems and had never been told he had any major illness involving his pancreas, gall bladder, or stomach. In 1973 he was 39 years old and weighed between 255 and 280 pounds.

We hold that the testimony of the defendants together with that of Mr. Emanuel raised a fact issue as to whether a physician in this community in the exercise of ordinary medical care would have suspected when he first examined the appellant in late March that his problem was appendicitis, would have used the other diagnostic aids that were discussed by the doctors, and would have hospitalized the appellant sooner.

We turn next to the question of proximate cause. Emanuel asserts that Dr. Bacon's failure to use available medical knowledge and diagnostic tests resulted in a failure to make a timely and adequate diagnosis of his appendicitis and that such failure to diagnose the condition at an early stage caused the appendix to rupture.

Dr. Bacon testified that prompt diagnosis of appendicitis is always desired; that it is desirable to remove an inflamed appendix before it perforates to avoid additional complications which might be involved from infection or spoilage of the peritoneal cavity related to wound infection; that nobody can tell how long it will take an inflamed appendix to perforate and that a doctor cannot tell a patient that his appendix will not perforate in seven hours as distinguished from 24 hours; that if one is aware that an appendix is inflamed or infected, then the surgical judgment is removal; that under the standards of medical care in this community an inflamed appendix is removed as soon as a reasonable diagnosis can be made because if it stays there it can perforate and be the cause of a lot of pain and irritation; that he assisted in Emanuel's appendectomy; that when he looked into Emanuel's opened abdomen he saw that the appendix was retrocecal and that it had perforated along the end of the stalk; that he saw quite of bit of pus in the abdominal cavity.

Dr. Harold, the surgeon who removed Mr. Emanuel's appendix, testified that the long-

er acute appendicitis is undiagnosed and the surgery is delayed, the more difficulty is encountered in later managing the peritoneal cavity area infection, that contamination of the peritoneal cavity by bacteria increases each hour that surgery is delayed, and that the period of hospitalization is lessened by diagnosis before complete perforation has caused peritoneal contamination. Dr. Harold's records indicate that when he examined the appellant in the hospital on March 31, it was his opinion that the appellant had acute appendicitis and that surgery was indicated. Dr. Harold testified that although he could not state exactly when appellant began having appendicitis, when he operated he found no other cause than appendicitis for the complaint of pain in the area of the navel and that, based on reasonable medical probability, the onset of peri-umbilical, low intensity, cramping pain that Emanuel testified he experienced on the day he saw Dr. Bacon was consistent with his surgical findings of appendicitis.

The expert testimony does not contain a direct statement that the peritoneal infections and subsequent complications suffered by Occie Emanuel were caused, in reasonable medical probability, by Dr. Bacon's failure to diagnose the condition in time to remove the appendix before it perforated, nor is there direct testimony that Emanuel's appendix would not have perforated if Dr. Bacon had hospitalized him and scheduled him for surgery on the day he saw Dr. Bacon in the doctor's office. Nevertheless, having indulged every reasonable intendment and inference in favor of the appellant, we cannot say that the foregoing testimony amounts to no evidence of proximate cause. There is at least some evidence to show that the plaintiff's injuries were proximately caused by Dr. Bacon's failure to meet the diagnostic standard and to remove the appendix before it perforated.

■ In his second point of error the appellant contends that the evidence and pleadings raised fact issues of negligence and proximate cause as to whether Dr. Harold deviated from the standards of medical care in closing the surgical wound. We hold that the testimony in this regard did not raise a fact issue. Although Dr. Grummon testified that when he performed the surgical hernia repair "something had to be disrupted," he could not tell if the mercaline sutures placed by Dr. Harold were disrupted, and he really did not even remember. Grummon also stated that it is the tissue which tears, not the sutures, and that in his informed opinion, the probability is that Mr. Emanuel's hernia developed because of tissue necrosis related to infection and not because the sutures tore. Dr. Harold testified that the sutures had not come apart and were not the problem. We do not agree that Dr. Harold's testimony supports the appellant's position that an incisional hernia can be avoided when the surgeon complies with accepted medical standards in closing an appendectomy incision. The evidence showed only that a possible cause of the hernia was the possible tearing of the sutures, and this possibility was not supported by Dr. Grummon, on whose testimony appellant relies. It was his view that it was the tissues, weakened by infection, which tore and allowed the hernia. He was asked to assume that if a doctor had properly sutured a patient of the weight of Mr. Emanuel, considering the amount of infection here involved, and that he was going to ambulate early, would Dr. Grummon ordinarily expect a hernia sac such as the one in our case to develop? He answered: "No," but he then asked whether they were talking about a patient like Mr. Emanuel or any abdominal wound. Appellant's counsel replied: "We are talking about abdominal wounds." Dr. Grummon replied that an average abdominal wound does not develop into a hernia. He said he does not ordinarily have this type of wound if a proper closure is made unless it gets infected. One of the problems with infections is to obtain proper treatment so as to prevent the hernial sac, but there are other problems that are "a little bit beyond us;" their causes are not known.

The appellant argues that although common knowledge and experience show that infection ordinarily exists in all abdominal

surgery procedures of infected organs, such patients do not suffer incisional hernias, and this raises a fact issue as to whether infection alone is likely to cause an incisional hernia. We hold that the evidence did not raise a fact issue as to whether Dr. Harold negligently performed the closure. We overrule the second point.

The appellant next asserts that fact issues of negligence and proximate cause were raised as to whether Drs. Bacon and Harold deviated from accepted medical standards in their post-surgical treatment of the infection and complications resulting in the incisional hernia. Dr. Harold's undisputed testimony was that the fecal fistula had formed around appellant's abdominal cavity drains and that it not only was an expected development but that it was a desirable one as well; it was beneficial to appellant in that it prevented further contamination of the abdominal cavity with fecal material. Concerning the wound infection, Dr. Harold testified that "there is nothing you can do" to prevent it from occurring; be definition, appendicitis is an infection, and an appendectomy wound is infected with millions of microscopic bacteria and germs. The appellant suggests that Dr. Harold negligently removed deep suturing material in the face of a deep wound infection, but it is uncontroverted that Dr. Harold removed only skin sutures for the purpose of cleaning the wound, and he testified that the secondary or surface closure is not indicated in an infected wound. We do not agree with the appellant's position that Dr. Harold "admitted that 50% of the doctors would handle a wound infection with secondary closure where there had been a disruption of the sutures from the surgery." We find no evidence that the wound infection resulted from the negligence of Drs. Harold and Bacon.

The appellant's fourth point asserts that fact issues of negligence and proximate cause were raised as to whether Dr. Grummon, in repairing the incisional hernia, deviated from accepted medical standards a) in perforating appellant's bowel and b) in removing 12 inches of his intestine during surgery rather than repairing it.

The testimony most favorable to appellant in this regard was Dr. Grummon's statement that if someone were to take a day-and-a-half with a dissecting microscope, maybe they "could have gotten all that out." The remainder of the expert testimony was to the effect that it was humanly impossible to repair appellant's hernia without damage to the fragile intestine and that it would be poor medical practice and poor surgery to keep a patient on the table that long. There is no testimony that it would have been better for Dr. Harold to repair the damaged intestine than to remove it, and there is no evidence of any negligent act or omission on Dr. Grummon's part. We do not reach the proximate cause question as to this point. We overrule the fourth point of error.

The dismissal order as to defendants Drs. Harold and Grummon is affirmed. As to Dr. Bacon, it is reversed and the cause is remanded.