Melvin METOT and Wife, Helena Metot, Appellants,

v.

Guy DANIELSON, M.D., Appellee.

No. 12-87-00083-CV.

Court of Appeals of Texas, Tyler.

June 30, 1989.

Rehearing Denied Nov. 22, 1989.

Michael S. Box, Les Weisbrod, Weisbrod & Weisbrod, Dallas, for appellants.

Kevin J. Keith, Bailey & Williams, Dallas, for appellee.

SUMMERS, Chief Justice.

This is a medical malpractice case. Appellants, Melvin and Helena Metot (hereinafter "Metots"), sued Appellee, Dr. Guy Danielson (hereinafter "Danielson"), for injuries suffered by Mr. Metot as a result of post-surgical drug therapy prescribed by Dr. Danielson. The Metots appeal from a take-nothing judgment in favor of Danielson. We reverse and remand.

On August 9, 1983, Dr. Danielson performed a cervical disectomy and fusion on Mr. Metot. Following that surgery, Danielson prescribed Decadron, a steroid, to alleviate pain. Metot developed severe pain in his right shoulder following the surgery and was re-hospitalized. Danielson performed a cervical laminectomy on Metot on September 20, 1983, and again prescribed Decadron for pain. Due to continued pain in his right shoulder, Metot was readmitted to the hospital on September 28, 1983, by Danielson's partner, Dr. Ronald Donaldson. On Metot's medical history Donaldson noted that the pain in his right shoulder could be the result of a "possible rotator cuff tear." During the period from August until October, 1983, Danielson prescribed and Metot received a total dosage of steroids amounting to the equivalent of 1935 milligrams of the steroid Prednisone. The Metots asserted that they were never aware that Metot was taking steroids and that Danielson never informed them of any potentially harmful side effects.

In the spring of 1984, Metot developed a pain in his groin area. He was diagnosed as having avascular necrosis. He experienced mobility difficulty, and his condition deteriorated progressively during 1984. Metot finally had to have both hips replaced in March, 1985. He presented evidence that the probable cause of the avas-

285

cular necrosis was the massive amount of steroids prescribed by Danielson.

The jury determined that Danielson was not negligent in prescribing an excessive amount of steroids, inappropriately prescribing steroids, continuing the steroids when they did not appear to be helping, and failing to keep track of the amount of steroids given. The jury found that Danielson failed to disclose all the risks and hazards involved in steroid use to the Metots; however, they concluded that this failure was not negligence. The trial court granted a take-nothing judgment on the verdict. The Metots' motion for a new trial was overruled by operation of law.

█ In their second point of error, the Metots contend that the trial court erred by denying their motion for a trial amendment. The Metots sought the trial amendment after the trial court sustained Danielson's objection to testimony from Dr. Howard Schwartz because it was not supported by the pleadings.

Schwartz testified that, in his opinion, Metot's pain following the first operation was caused by a tear in his rotator cuff sustained while moving him in the operating room. The following exchange then occurred:

Q: Doctor, are you experienced in moving patients on and off a table?

A: Yes, sir.

Q: Do you do that in the emergency room?

A: Yes, sir.

Q: You are familiar, then, with the standards for moving patients on and off a table?

MR. WILLIAMS: Your Honor, I object to this line of question. There are no pleadings to support it whatever.

THE COURT: Overrule the objection.

A: Yes, sir.

Q: Doctor, do you have an opinion, assuming that the testimony has been that Dr. Danielson told Mr. and Mrs. Metot that Mr. Metot acquired his rotator cuff tear when he was being moved on or off the table of his first surgery? Do you have an opinion as to whether

or not acquiring a rotator cuff tear in that manner would be a deviation from the acceptable standard of care?

MR. WILLIAMS: Your Honor, I object. There is absolutely no pleadings. None.

THE COURT: I sustain the objection to that question.

MR. WEISBROD: Your Honor, testimony has already been in the record concerning the admission of Dr. Danielson. *At this time we move for a trial amendment.* (Emphasis added.)

MR. WILLIAMS: We object to any such thing, Your Honor. *It's rather late in the trial for that.* (Emphasis added.)

THE COURT: I'll overrule the request at this time.

The record before this Court does not contain a written copy of the proffered trial amendment, nor did the Metots' attorney dictate his proposed trial amendment into the record. Even assuming that the desired amendment would have been one that the trial court should have permitted, the Metots failed to preserve error. Tex.R. Civ.P. 45(d); *Templeton v. Unigard Sec. Ins. Co.*, 551 S.W.2d 514, 517 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.). A litigant cannot discharge his burden of showing an abuse of discretion where no written trial amendment was ever tendered for filing during the trial, and no such instrument is found in the record. *Heritage Manor, Inc. v. Tidball*, 724 S.W.2d 952, 954 (Tex.App.—San Antonio 1987, no writ). The Metots' second point of error is overruled.

In their first point of error, the Metots claim that the trial court erred by refusing to allow expert testimony concerning negligence with regard to Mr. Metot's rotator cuff tear. The Metots' brief does not specifically identify the expert testimony about which they complain, but we assume it is Schwartz's because this point is argued with point of error number two. The Metots' only argument pertaining to this point asserts that their live pleading, Plaintiffs' First Amended Original Petition, sufficiently supported evidence regarding the negligence of Danielson in causing the ro-

tator cuff tear. Even a cursory reading of that pleading reveals that such is not the case. The first point of error is overruled.

In their third point of error, the Metots contend that the trial court erred by refusing to disregard the jury findings on Special Issues Numbers 1, 5, 6, and 7 [1] because those issues were conclusively established by the evidence. In point of error number four, the Metots assert that the trial court erred by failing to grant their motion for new trial because the findings on the same issues were against the great weight and preponderance of the evidence.

The Metots assert the evidence at trial conclusively established each act of negligence alleged in Special Issue Number 1.[2] Contrary to that contention, the record reveals that these issues were hotly disputed at trial. Thus, the trial court properly denied the Metots' motion to disregard those jury findings.

■ Danielson argues that the Metots did not properly preserve their allegations that the jury findings were against the great weight and preponderance of the evidence. This argument appears to be based upon the fact that the Metots filed their motion for new trial on the last day possible, and the record does not reveal any request for a hearing on the motion. As we understand Danielson's brief, he contends that merely filing a motion for new trial is not sufficient to preserve error on appeal; the movant must in some way "direct the court's attention" to the motion for

new trial. We do not agree with this contention because to do so would have the effect of adding a requirement to Tex.R. Civ.Proc. 324 not present in the literal language of the rule.[3] Moreover, Danielson claims the motion for new trial lacks specificity. We hold that the Metots' motion for new trial was sufficiently specific to preserve their contention that the jury findings to Special Issues Numbers 1, 5, 6, and 7 were against the great weight and preponderance of the evidence.

■ When considering the contention that a jury finding is against the great weight and preponderance we must consider all of the evidence presented at trial. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). After considering the lengthy record in this case, we hold that the jury's answers to Special Issues Numbers 1, 5, 6, and 7 were not so against the great weight and preponderance of the evidence as to be manifestly unjust. The Metots' third and fourth points of errors are overruled.

In their fifth point of error, the Metots assert that the trial court erred in refusing to admit testimony from Schwartz because he is not from the "same school of medicine" as Danielson. Schwartz is board certified in internal medicine, medical toxicology, and emergency medicine. Danielson is a neurosurgeon. Schwartz asserted that there were general minimum standards for the prescription of steroids applicable to all physicians. The court refused to admit the

1. Special Issue Number 1 and the jury answers thereto read as follows:

On the occassion in question did Dr. Danielson prescribe an excessive amount of steroids, inappropriately prescribe steroids for relief of pain following cervical disectomies [sic], continue to prescribe steroids after it was apparent steroids had not helped, fail to keep track of the amount of steroids given?
Answer "Yes" or "No" with respect to each of the following:

(a) Excessive amount NO
(b) Inappropriately for relief of pain NO
(c) Continued after apparent had not
 helped NO
(d) Failed to keep track of amount given NO

Special Issues Numbers 5 and 6 are companion issues to Special Issue Number 4 by which the jury determined that Danielson failed to

disclose to Metot the risk of using steroids. In Special Issue Number 5 the jury determined that the failure was not negligence, and in Special Issue Number 6 the jury determined that the failure was not the proximate cause of Mr. Metot's injuries. Special Issue Number 7 was a damage issue with respect to Mr. Metot. The jury answered zero to all elements of damages.

2. No arguments were made regarding Special Issues Numbers 5, 6, or 7.

3. Although we recognize the validity of Danielson's argument, Rule 324 in its present form and language was in place prior to the filing, trial, and appeal of this case. This literal language was followed by the Metots, and we believe that any change adding additional requirements to the rule must be made by the Supreme Court of Texas.

testimony on the basis that Schwartz had not established his qualifications to express the opinion requested.

 The courts of Texas follow the general rule that a plaintiff in a medical malpractice case has the burden of proving his case through a practitioner of the same school of medicine. *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779, 782 (1949). This general rule, however, is inapplicable where the subject of inquiry is common to and equally developed in all fields of medical practice. *Porter v. Puryear*, 153 Tex. 82, 262 S.W.2d 933, 936 (1953). The trial court's failure to allow a board certified medical toxicologist and internist to testify with respect to general standards for the prescription of drugs was an abuse of discretion. The Metots' fifth point of error is sustained.

In their sixth point of error, the Metots claim that the trial court erred by (1) allowing the jury to know that the court had excluded Schwartz's testimony because he was not a neurosurgeon and (2) submitting the definitions of "ordinary care," "negligence," and "proximate cause" in terms of a "neurosurgeon" rather than an ordinary "physician."

 The Metots' argument regarding their first complaint is patently without merit. Danielson's attorney took Schwartz on voir dire [4] during his testimony. At the end of the voir dire examination, Danielson's attorney made the following objection: "Your Honor, we object to this witness appearing as an expert witness in so far as the conduct of this neurosurgery is concerned. He is clearly not qualified under the law of this state." Before ruling, the trial court removed the jury from the courtroom and had an extensive hearing on the merits of the objection. The trial court sustained the objection outside the presence of the jury. When the jury was returned to the courtroom, the Metots' counsel asked a question similar to the one already ruled upon by the court. The trial court then asked the Metots' counsel if he understood the court's ruling, but did not elaborate or explain the ruling. We hold that the court's question did not constitute a comment on the weight of the evidence. No error is shown.

 As we understand the second part of the point, the Metots assert that the trial court, in his charge, improperly commented upon the weight of the evidence by submitting the definitions of "ordinary care," "negligence," and "proximate cause" in terms of a "neurosurgeon" rather than as a "physician." The Metots failed to preserve this purported error.

Tex.R.Civ.Proc. 274 states the following rule with respect to errors in the charge:

A party objecting to a charge must point out *distinctly the objectionable matter and the grounds of the objection.* Any complaint as to a question, definition, or instruction, on account of any defect, ommission, or fault in pleading, is waived unless specifically included in the objection. (Emphasis added.)

Tex.R.App.P. 52(a) states the general standard for appellate review:

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the *specific grounds for the ruling* he desired the court to make if the specific grounds were not apparent from the context. (Emphasis added.)

When the trial court called for objections to the proposed charge, the Metots' counsel requested in writing, alternatives for the definitions of "ordinary care," "negligence," and "proximate cause." He then recited the following objection:

And our objection to the charge is that it currently defines the physician as a neurosurgeon or uses the word, neurosurgeon, in ordinary negligence and proximate cause. And it is our belief that it should either state in those places as we are submitting to the court the proper instruction, of simply physician, or in the alternative, physician prescribing steroids. We believe this to be correct because it is, number one, in keeping with

4. This exam consumed three pages of the state- ment of facts.

the testimony of Dr. Danielson that other physicians, not just neurosurgeons, prescribe steroids and there are some minimum standards that would be applicable to all physicians who prescribe steroids. In addition, we believe that the proposals that we have submitted to the court in writing for the correct instructions in this regard are in keeping with Volume 3 of the Texas Pattern Jury Charge, specifically with the comment at the bottom of Page 23 of Volume 3, of the Texas Jury Charge, stating, an appropriate case where multiple specialties perform surgery or medical treatment, that it would not be—it would be more appropriate and not inappropriate to simply put neurosurgeon [sic].

This objection did not indicate to the trial court that the Metots claimed that the definitions constituted a comment on the weight of the evidence. Nor was the complaint apparent from the context. Thus, the error, if any, was waived and cannot be raised on appeal. The sixth point of error is overruled.

█ In their seventh point of error, the Metots assert that the trial court erred by refusing to allow testimony from one of their experts respecting the ultimate issues of "negligence" or "proximate cause" of Danielson.

While reading the deposition of Dr. James Wepsic into evidence, the Metots attempted to read a passage asking Wepsic to assume the definitions of negligence and proximate cause and then to express his opinion as to whether Danielson's conduct was negligent and a proximate cause of Metot's injuries. The trial court excluded the questions propounded to Wepsic about negligence and eliminated the references to the term "negligence" in the question about proximate cause.

Tex.R.Evid. 704 states the following rule with respect to opinions embracing ultimate issues in a case:

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

The Supreme Court recently held that an expert in a medical malpractice case could testify that a hospital's conduct was "negligence," "gross negligence," "heedless and reckless conduct," and "proximate causes" pursuant to Tex.R.Civ.Evid. 704. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 365 (Tex.1987).

Danielson asserts that the *Birchfield* opinion places two qualifications upon the admissibility of such evidence, requiring the opinion to be (1) "confined to the relevant issues" and (2) "based upon proper legal concepts." *Id.* The first purported qualification merely requires that the evidence be relevant. Rule 704 requires an opinion to be "otherwise admissible," and Tex.R.Evid. 402 provides: "Evidence which is not relevant is inadmissible." Wepsic's answers to the questions focused clearly upon Danielson's use of steroids for Mr. Metot. They were relevant to the case.

The second purported qualification requires that the opinion be based upon "proper legal concepts." Wepsic was asked to assume legally correct definitions of negligence and proximate cause. Thus, we hold his opinions were based upon "proper legal concepts." The trial court erred in refusing to admit Wepsic's testimony. The Metots' seventh point of error is sustained.

We reverse the judgment of the trial court and remand the cause for a new trial.

COLLEY, Justice, concurring.

I concur in the result reached by the majority. I cannot agree, however, with the majority's ruling that the Metots preserved their right to complain that "the trial court erred by failing to grant their motion for new trial," in which motion the Metots alleged that certain negative findings of the jury were against the great weight and preponderance of the evidence. Appellee argues, and I think correctly so, that the complaint was not preserved because the Metots did not request that the trial court hear and consider the motion for new trial, or otherwise "direct the court's attention" thereto.

Tex.R.Civ.P. 324(b) (effective April 1, 1984) reads, in part:

MOTION FOR NEW TRIAL RE-QUIRED. A point in a motion for new trial is a *prerequisite* to the following points on appeal:

. . . .

(2) A complaint of factual insufficiency of the evidence to support a jury finding;

(3) A complaint that a jury finding is against the overwhelming weight of the evidence;

(4) A complaint of inadequacy or excessiveness of the damages found by the jury; or

(5) Incurable jury argument if not otherwise *ruled on by the trial court.* (Emphasis mine.)

Tex.R.App.P. 52(a) stoutly proclaims that "[i]n order to preserve a complaint for appellate review, a party must have presented to the trial court a timely . . . motion. . . . If the trial judge refuses to rule, an objection to the court's refusal to rule is sufficient to preserve the complaint."

Tex.R.App.P. 54(a) provides that "if a timely motion for new trial . . . has been filed by any party, . . ." the time for filing the appellate record is extended from 60 days after the judgment in a civil case is signed to 120 days after the judgment is signed. This is true regardless of whether the grounds alleged in the motion are meritorious. To accommodate that procedure, Tex.R.Civ.P. 329b(c) provides that if a motion for new trial "is not determined by written order signed within seventy-five days after the judgment was signed, *it shall be considered overruled by operation of law on expiration of that period.*" Furthermore, Tex.R.Civ.P. 329b(e) grants the trial court plenary power to grant a new trial "until thirty days after . . ." a motion for new trial has been overruled, "either by a written and signed order or by operation of law, whichever occurs first." That provision expands the trial court's power over its judgments to the extent that a trial court, after becoming aware of the motion, may reverse its denial occasioned by the mere lapse of time and grant a new trial, thus eliminating a needless appeal.

Good sense dictates that no trial judge can be presumed to be cognizant of the existence of a motion for new trial when it is filed only with his clerk, and is not presented to the court nor otherwise called to the judge's personal attention. I am unwilling to agree with the majority's decision that the common practice of filing a motion for new trial in a jury-tried case simply to buy time for filing the appellate record suffices to preserve the *merits* of the motion for appellate review. I am persuaded that such ruling runs afoul of both Tex.R.App.P. 52(a) and sound appellate procedure. Indeed, that ruling raises an important policy question: Why *should* an appellate court have the authority to reverse a cause for "trial error" never once called to the trial court's attention for correction?

I strongly believe that Rules 324(b) and 52(a), when read together, require the party filing the motion for new trial to present the motion to the trial court for a ruling [5] in order to preserve error, if any, in that ruling for appellate review.

---

**5.** Thus bringing the trial practice in civil cases in harmony with the rule in criminal cases. *See* Tex.R.App.P. 31(c), (e)(1), (2).