Bobby Gene **CHRISTIAN**, Appellant,

v.

**J. R. JETER**, Appellee.

No. 4820.

Court of Civil Appeals of Texas.

Waco.

Aug. 14, 1969.

Rehearing Denied Sept. 11, 1969.

Brown, Elliott, Brown & English, Turner, Rodgers, Winn, Scurlock & Terry, John McElhaney, Dallas, for appellant.

Lynn B. Griffith, Waxahachie, Cantey, Hanger, Gooch, Cravens & Munn, Wm. B. David, Ft. Worth, for appellee.

## OPINION

WILSON, Justice.

An instructed verdict was granted in favor of defendant, a physician, and judgment was rendered that plaintiff take nothing in this medical malpractice case.

Plaintiff alleged defendant, who practices in Ennis, reset or attempted to reset his dislocated elbow; that he failed to reduce the displacement or to determine it was not properly set until three months later, when it was too late to reset the elbow and restore it to its normal condition. It was pleaded that corrective surgery was performed by an orthopedic specialist in Dallas, despite which the range of motion and use of the elbow remained permanently impaired. There was evidence to support these averments.

Negligence alleged included failure to make "follow-up X-rays" until about three months after the attempted resetting, and reliance solely on manual palpation and observation as diagnostic methods. It is undisputed that no further X-rays were made after the preliminary hospital admission examination, and that thereafter examination was confined to visual and manual methods. There was testimony that plaintiff complained to defendant following the reduction procedure, and shortly after he recovered from the anesthetic, that he had felt his "arm slip in the joint and had tremendous pain with it". Swelling persisted during the three months. There is evidence further X-rays were then requested, and defendant replied that there was no need; "it couldn't slip out of place".

Plaintiff called as a witness the orthopedic specialist, Dr. Evans, who performed subsequent corrective surgery. He described the latter procedure. He testified he examined an X-ray of the elbow made nearly three months after the first hospital admission, and just before defendant referred plaintiff to him, as well as the first X-ray made at the time of the original injury; that the last X-ray showed the elbow still had "the same appearance as the original X-ray, and was still not reduced". Calcification had developed in the joint. He testified that prompt reduction, maintained, at the time of the accident causing displacement, would in reasonable medical probability have resulted in complete recovery; and that within a week thereafter the dislocation could again have been reduced so as to avoid corrective surgery.

Dr. Evans testified that the dislocation or a re-dislocation could have been detected by the use of X-rays. When asked whether it was reasonable and prudent for a "follow-up X-ray to be taken under those circumstances", defendant's counsel objected that the witness was a specialist, not a general practitioner, and until the witness stated he knew the "general practitioner's standard of care, then we feel that what standard of care Dr. Evans might have as an orthopedist is a different standard of care from a general practitioner". The objection was sustained.

Thereafter on this objection, the bill of exception shows, the following evidence of Dr. Evans was excluded: "I would think one would make an X-ray under these circumstances to reinforce whatever his feelings might be about the extremity"; testimony that Ennis is 35 miles from Dallas; that although the witness was a specialist, "wherever the town, or whatever the situation" an X-ray was needed to confirm reduction of a dislocated elbow; that as to this question there was not a "different or lower standard of care in a town such as Ennis, Texas" than that in Dallas "in reduction of elbows"; that the necessity for corrective surgery was "the failure to detect this by whatever means is best to illustrate it, which would be X-ray, which ap-

parently was not taken until some later date and necessitated this"; that "in the medical field" this is "a hazard that should be guarded against by recurrent examinations"; that "you are more likely to see the correct relationship on an X-ray examination than by physical examination alone in those circumstances in which one has swelling and discomfort"; that swelling interferes with palpation, which is the reason for "prudence dictating the use of X-rays."

Other testimony of Dr. Evans excluded was that general practitioners "over the years and still as of today reduce dislocated elbows"; that it is a type of procedure in which you ordinarily expect a general practitioner to be proficient and competent in"; that in an adult a competent general practitioner would be expected "to be able to reduce an elbow and obtain as good results on an average as an orthopedic man"; that a general practitioner is equally qualified to take post-reduction X-rays to determine proper alignment" and X-rays are equally available to both. He would have testified that plaintiff's condition in reasonable medical probability, "could and should have been avoided by the timely use of X-rays and follow-up care as indicated by those X-rays shortly after his initial reduction procedure"; that the physician, "whether he be a family physician, an orthopedist, a pediatrician, whoever may be handling this, whether it is in Dallas or wherever you want to say" is to be certain that what he has done "is right, and that the patient has sustained no harm", and "in a case such as we are discussing, if one has felt that a joint has been re-dislocated or something has happened once an initial treatment was instituted, for one's own supplementation of his own clinical judgment and feeling, I feel X-rays should be made", whether orthopedist or general practitioner; that he was aware of no lower standard of care in Ennis.

The stated grounds of the sustained motion for instructed verdict was that "there had been no testimony by a general practitioner or by any medical expert who is qualified to know the standard of care of a general practitioner in this area" that defendant "was guilty of any breach of duty or that he was negligent in failing to do something that an ordinary prudent general practitioner would or could have done under the same circumstances", and there was no evidence of proximate cause.

Defendant and the court appeared to be of the view that "somebody who is familiar with the practice in the locality where the defendant practices must testify that he was negligent in his treatment", and must testify as to causation.

If this was then considered to be the law, it is not so now. In Snow v. Bond (Tex.Sup.1969) 438 S.W.2d 549, decided after this case was tried, the Supreme Court held: "What constitutes negligence or malpractice is a mixed question of law and fact that can only be determined by the trier of fact" and a "medical expert is not competent to express an opinion thereon."

■ The court further held that what a reasonable and prudent doctor would have done under the same or similar circumstances must also be determined by the trier of fact "after being advised concerning the medical standards of practice and treatment in the particular case". Testimony of what a reasonably prudent doctor would have done, negligence, and whether the plaintiff's condition was due to defendant's negligence are inadmissible conclusions.

■ The fact that Dr. Evans was from Dallas did not preclude his testimony "concerning the medical standards of practice and treatment" in Ennis in this type of case. Sufficient familiarity with such standards was shown to make his evidence admissible.

The present rule is summarized 8 A.L. R.2d 773: "In the days when there was little inter-community travel the courts required personal familiarity with the practice of physicians in the particular commu-

**54**

nity where the plaintiff was treated as the basis for the expert's testimony". This was on the theory that a doctor in a small community did not have "the same opportunity or resources for keeping abreast of his profession". The reason for the rule has now disappeared with the advent of modern transportation and communication, with no lack of opportunity to keep abreast of methods and practices. The controlling factor in determining competency now is that the medical witness have

> "practical knowledge of what is usually and customarily done by other practitioners under circumstances similar to those which confronted the defendant charged with malpractice".

Dr. Evans' testimony was not inadmissible on locality grounds. Turner v. Stoker (Tex.Civ.App.1926) 289 S.W. 190, 194, writ ref.

■ Neither was the witness incompetent to testify on the ground he was not of "the same school of practice" as defendant. Defendant, as was the witness, was a licensed Doctor of Medicine. He was a graduate of Baylor University Medical School in 1937, and thereafter "spent two years in Parkland Hospital, Dallas". He practiced medicine in Sherman for a year, and has since practiced in Ennis. He had five years' experience as a doctor in the United States Air Force, during two years of which he was associated with a hospital.

The witness attended Southwestern Medical School of the University of Texas, interned at Baylor University Medical Center, and had four years of orthopedic specialty training in Parkland Hospital, Scottish Rite and Baylor hospitals in Dallas.

Under the facts of this case they are of the "same school of medicine", notwithstanding the witness was an orthopedic specialist.

"Where the particular subject of inquiry is common to and equally recognized and developed in all fields of practice", moreover, or "where the subject of inquiry re-

lates to the manner of use of electrical or mechanical appliances in common use in all fields of practice" (as the record shows is true of X-rays in this case), the rules relating to admission of opinion evidence in mapractice cases is qualified. Porter v. Puryear, 153 Tex. 82, 262 S.W.2d 933, 936.

■ In our opinion the excluded evidence was sufficient to establish the necessary standard, and the instructed verdict was not authorized. Reversed and remanded.