Herbert J. DUPREE, Sr., Appellant,

v.

Nicholas PALMAROZZI et al., Appellees.

No. 8338.

Court of Civil Appeals of Texas, Beaumont.

Jan. 10, 1980.

Rehearing Denied Jan. 31, 1980.

---

Charles Sexton, Orange, for appellant.

Ken Parker, Russell Cooper, Cleve Bachman, Beaumont, for appellees.

CLAYTON, Justice.

This is a medical malpractice case. Herbert J. Dupree, Sr. (Dupree) was the original plaintiff; but, after his death, a Suggestion of Death was filed, and his heirs, Laura C. Dupree, individually and as next friend for Alice Suzanne Dupree, and Herbert J. Dupree, Jr., were substituted as parties plaintiff. Dupree filed this suit against Dr. Palmarozzi and Dr. Barnett (appellants), Dr. Ruffle, and Doctor's Hospital, Inc. The cause of action against Dr. Ruffle was severed and default judgment was entered against him. A non-suit was taken against the hospital. The cause was tried to a jury against Dr. Palmarozzi and Dr. Barnett. The trial court granted an instructed verdict in favor of both defendant doctors and entered a take-nothing judgment against plaintiff, from which judgment plaintiff has perfected this appeal.

This being an appeal from an instructed verdict, we must accept as true the evidence supporting plaintiff's allegations. All conflicts and inconsistencies must be resolved in favor of plaintiff, and we must draw all inferences therefrom most favorable to plaintiff's cause of action. *Constant v. Howe,* 436 S.W.2d 115 (Tex.1968); *Hart v. Van Zandt,* 399 S.W.2d 791 (Tex.1965).

The basic complaint of negligence made against each defendant was that surgery was performed upon Dupree without first making proper tests and proper bowel preparation. The main thrust of the acts of negligence was that a barium enema was not given prior to surgery resulting in defendants' failure to discover an obstruction or tumor, and such failure to discover the tumor necessitated additional surgery.

The record before us shows, considering the evidence in the light most favorable to plaintiff-appellant, that Dupree had been a patient of Dr. Barnett's for several years. He had been advised on one occasion that he had all the symptoms of cancer. Dupree had numerous treatments and hospitalizations while under Dr. Barnett's care. He had a sigmoidoscopy (performed by Dr. Palmarozzi) in 1970 and another in 1973. He had two previous barium enemas and had two hospital admissions in 1975 prior to the admission in which Dr. Palmarozzi performed the surgery about which complaint is made. Dupree was admitted to the hospital in March 1975 at which time Dr. Palmarozzi did an exploratory laparotomy and discovered a tumor in the colon. Dr. Barnett assisted him in this surgery. A resection of the colon was not done at that time. The colon was later resected at a hospital in Houston.

Defendants strongly argue there is no evidence in the record showing negligence and proximate cause on the part of either doctor-defendant. Dr. Barnett testified that he did not order a barium enema given prior to surgery, and Dupree was not given a sigmoidoscopic examination. The only reason for not giving the barium enema was that Dupree had refused such enema. Dupree denied having refused this test. Barnett said that he did not order the sigmoidoscopic examination because he as-

sumed Dupree would have refused this since he had refused the barium enema. He further testified that had the barium enema been given "there's a good possibility [the tumor] would have been found," that if the sigmoidoscopic examination had been given the tumor would "in all reasonable medical probability" have been discovered. He noted in his progress notes that Dupree was "to have a barium enema," but he did not order one prior to surgery.

Dr. Palmarozzi testified that he had performed a physical examination on Dupree prior to surgery. He did not order a barium enema before surgery. He did not request any lab or x-ray work to be done prior to surgery because the "lab work had already been ordered, and the x-ray procedures, which were acceptable, had already been ordered." He further stated that "I think it would have been a good idea" to have given a barium enema prior to surgery. His testimony further shows that he wasn't sure, prior to surgery, that Dupree had a tumor, but he "thought he had something wrong with him which was not evidenced in the studies which had been performed." In response to the question, "Had there been a barium enema, do you think [the tumor] would have shown up?" He answered, "I don't know that the tumor would have shown up. I believe that the obstruction would have shown up."

Dr. Palmarozzi further testified that "[w]hen I operated [on] him, I positively expected to find what I called a 'mechanical appendix'; but I was suspicious that we might find something else." The appendix was not removed; a colostomy was done. Prior to the surgery, there was "no bowel preparation" done. Upon being asked the question, "Once you opened Mr. Dupree up and discovered he had a tumor, is there any particular reason why you did not go ahead and take the tumor out?" He answered, "Yes, . . . [t]he bowel was not prepared for removal of the colon."

After the colostomy was performed, Dupree's wife, being dissatisfied, had plaintiff removed from the hospital and transported to a Houston hospital where the resection of the colon was done.

Plaintiff introduced into evidence the deposition testimony of Dr. William Andrew, Jr. Defendants did not object to this testimony. Dr. Andrew's qualifications were given as follows: "I had pre-med at Texas A. & M. I went to medical school at Southwestern Medical College in Dallas, graduated in 1946, [a]nd did a general internship at Breckenridge Hospital in Austin in '46–'47; '47–'48 was resident in pathology at . . . Parkland Hospital in Dallas; [d]id general practice in West Texas until 1951; was called into the Air Force in 1951; went through the School of Aviation Medicine; did [i]nternal [m]edicine in the Air Force at Maxwell Air Force Base in Montgomery, Alabama for two years; . . . I had one year residency in Radiology at Breckenridge Hospital in Austin, followed by eighteen months residency in Radiology at Parkland Hospital in Dallas." He is "Board certified in Radiology."

Dr. Andrew testified that it is standard procedure in the medical profession, under the circumstances relating to Dupree's condition and surgery, for doctors to give a barium enema, and "that it would be a violation of good medical practice to not give a barium enema under these circumstances." In response to the question, "In your opinion, had they given Mr. Dupree a barium enema before he was operated on, since you've looked at the records of both Doctor's Hospital and Houston Diagnostic in Houston, do you believe in your opinion that they would have found this growth in his—I think it's his large intestine?", he answered, "I would certainly think so." He testified that he had given "many, many barium enemas" and that he had located "tumors of this general type before." In his opinion, "had they given a barium enema, they would have found the tumor a week before"; that to give the barium enema was "a very standard procedure"; and that "had they given the gentleman a proctoscopic examination," that he would think they would have found the tumor "at this time when they operated on him."

In response to the question, "I believe in the medical records in Houston it was . .

they did a barium enema on him and found approximately a week later that Mr. Dupree was almost totally obstructed." Dr. Andrew answered, "That's my understanding from the records." The question, "Assuming that the doctors were qualified at Groves Hospital in Groves, had they located the tumor, it would not have been necessary for Mr. Dupree to go to Houston and perhaps have these additional operations?", was answered, "I wouldn't think so. I would think that the tumor, if the tumor had been diagnosed prior to his—prior to the operation in which the colostomy was originally done, the resection of the tumor could have been accomplished at that time."

■ The testimony given by the defendants and Dr. Andrew, when viewed in the light most favorable to plaintiff, shows that a barium enema was not given plaintiff prior to surgery; that the standard medical procedure and practice was to give the barium enema at such time; and that, if such had been given, the tumor would have been discovered. The failure to give the proper bowel preparation prior to surgery prevented the colon resection at the time of the surgery, and this was the reason for the additional surgery. This is some evidence of probative value to raise a fact issue of negligence and proximate cause which should have been submitted to the jury.

■ Even though defendants made no objections to the testimony given by Dr. Andrew, they now contend such evidence was not competent and should not be considered for any purpose. Their first contention is that Dr. Andrew is not qualified to testify as an expert witness against these defendants because Dr. Andrew is a radiologist while both defendants are osteopaths, and specifically Dr. Palmarozzi being a surgeon. Based upon the qualifications of Dr. Andrew and the fact that both defendants have recognized the value of the barium enema test; that they have given it before; and the test was given prior to the surgery performed in the hospital in Houston, we overrule this contention. It appears the test has been used and relied upon by surgeons and doctors in the general medical field as well as by osteopaths. Where a particular subject of inquiry is common to and equally developed in all fields of practice, and the prospective medical expert witness has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those which confronted the practitioner with malpractice, the witness is qualified to testify. *Porter v. Puryear*, 153 Tex. 82, 262 S.W.2d 933 (1953); *Simpson v. Glenn*, 537 S.W.2d 114 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.); *Christian v. Jeter*, 445 S.W.2d 51 (Tex.Civ.App.—Waco 1969, writ ref'd n. r. e.).

■ Defendants further urge the incompetency of Dr. Andrew's testimony because the standard of care stated by him was not stated as the standard exercised in defendants' community or some similar community. This requirement has been expressly overruled. *Christian v. Jeter*, supra. Our Supreme Court in *Webb v. Jorns*, 488 S.W.2d 407 (Tex.1972) holds that a trial court has discretion in the administration of the community standard. In the case at bar, the trial court admitted the testimony. Such action has not been attacked by defendants. The evidence is in the record, and the testimony of Dr. Andrew is not incompetent.

Plaintiff has presented some evidence of probative value to raise fact issues as to negligence and proximate cause. The instructed verdict was erroneously granted.

The judgment of the trial court is reversed, and the cause is remanded.

REVERSED and REMANDED.