**Robert D. BILDERBACK, M.D., Appellant,**

v.

**Otho M. PRIESTLEY, Appellee.**

**No. 04–85–00159–CV.**

Court of Appeals of Texas, San Antonio.

April 9, 1986.

Robert E. Etlinger, San Antonio, for appellant.

George W. Mauze, II, San Antonio, for appellee.

Before BUTTS, DIAL and BISSETT *, JJ.

* Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX.REV.

## ON APPELLANT'S MOTION FOR REHEARING

BISSETT, Justice (Assigned).

The opinion and judgment of this Court of February 28, 1986 are withdrawn and this opinion is substituted therefor. Dr. Bilderback's motion for rehearing, in part, is granted.

This is a medical malpractice case. Otho M. Priestley was plaintiff in the trial court and Robert D. Bilderback, M.C., was defendant therein. The case was tried to a jury, which answered favorably to plaintiff. Judgment was signed on January 8, 1985, wherein plaintiff recovered, as damages, the sum of $13,673.08, plus post-judgment interest thereon at the rate of 10% per annum until paid. Defendant has appealed the judgment. Plaintiff, by cross-point, requests that this Court award her prejudgment interest on the amount of damages from April 2, 1982, until the date of judgment. The parties to this appeal will be referred to as "plaintiff" and "defendant," as they were in the trial court.

On or about June 8, 1981, plaintiff slipped at her place of employment and sustained injuries to her left knee. She was 63 years of age at that time. She initially consulted a number of physicians at Wilford Hall Center in San Antonio, Texas. On September 9, 1981, she consulted defendant for the first time with respect to treatment for her injuries. In her history to defendant, she stated that she had injured her left knee; she did not complain of any injury to her back. Plaintiff was placed upon a course of physical therapy by defendant preparatory for surgery to remove a "loose body in the left knee" found by him during his examination of plaintiff. The physical therapy treatment continued until October 2, 1981, when plaintiff ceased seeing defendant. Subsequent to that date, she consulted a large number of physicians for treatment of her injuries, complained of by her. Among those physi-

CIV.STAT.ANN. art. 1812(d) (Vernon 1983).

cians was Dr. Evalee Snead, who treated her from June 10, 1983, to May 9, 1984.

At the time of trial (December 12, 1984), plaintiff contended that certain conditions complained of by her were pre-existing at the time of her visit to defendant on September 9, 1981, and that such pre-existing conditions were aggravated by defendant during his course of treatment of her. She makes the same contentions in this appeal.

The jury found: 1) that spinal stenosis was a pre-existing condition on September 9, 1981; 2) that defendant's treatment of plaintiff aggravated such pre-existing condition; 3) that the aggravation of such pre-existing condition in the treatment of plaintiff by defendant was negligence and a proximate cause of the condition complained about; and 4) that defendant failed to diagnose and treat the condition of spinal stenosis "under the generally accepted standards in the community for treatment of a person in the same or similar physical condition of" plaintiff, which failure was "negligence" and "a proximate cause of the occurrence in question."

Defendant, in this appeal, first contends that there was "no evidence," or in the alternative, that the evidence was "factually insufficient" to show that Dr. Evalee Snead, plaintiff's only medical witness, "was familiar with the standard of care within the community for treatment of an individual in the same or similar circumstances as plaintiff." He states in his brief that Dr. Snead was not qualified as an expert witness since he never testified concerning the standard of care for a doctor treating a patient in the same or similar circumstances as plaintiff, and never testified that she was familiar with the standard of care in the community. He argues that plaintiff never raised a fact issue concerning negligence which could have been submitted to the jury, and, therefore, her case "fails as a matter of law."

It is established law in Texas that the plaintiff in a medical malpractice case has the burden of proving that the defendant-doctor "has undertaken a mode or form of treatment which a reasonable and prudent member of the medical profession would not have undertaken under the same or similar circumstances ..." *Hood v. Phillips,* 554 S.W.2d 160, 165 (Tex.1977). "Unless such mode or form of treatment is a matter of common knowledge or is within the experience of the layman, expert testimony will be required to meet this burden of proof." *Hood,* at 165–166. It is also established law in this state that a defendant-physician's own testimony is sufficient to establish the applicable medical standard. *Wilson v. Scott,* 412 S.W.2d 299, 303 (Tex.1967); *Baker v. Story,* 621 S.W.2d 639, 643 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.).

In the case at bar, both defendant and Dr. Snead were Doctors of Medicine, and both were active in the practice of medicine. Defendant is a board certified orthopedic surgeon. Dr. Snead administers physical therapy to her patients on a frequent basis. She stated that more than 50% of her patients were over 60 years of age, and spinal problems and disabilities were common in that age group. In general, she testified that many of her patients have spinal stenosis and that she treated them for that condition. In particular, she testified, in response to the questions proposed to her, as follows:

Q: Doctor, let me ask you, in your professional opinion, as a general physician and as a physician who administers therapy, is it within community standards to continue therapy with weights when a person is experiencing pain?

A: It's difficult to answer unless you ask anybody in particular, but most people would not do it because pain is a general warning that it is overrising or overtaxing that part of the body.

Q: Okay. Would it be, in your professional opinion, within community standards to, in fact, when a person is experiencing pain to increase the therapy and the poundage of any weights?

A: No.

Defendant testified that after his examination of plaintiff with respect to her complaints regarding her left knee, he prescribed exercises involving the use of weights. The exercises were supervised by two therapists employed by him and were conducted in his office. He stated that plaintiff never told him that she suffered pain during the exercises or at any time following the completion of the exercises. The written records of what occurred and what plaintiff told the therapists show that plaintiff repeatedly complained that her left leg was "numb"; that she had pain "in the thigh" and pain "on the hip and back since lifting weights." Although the notations made by the therapists were readily available to defendant, he never, at any time, examined plaintiff's back, nor did he reduce the weights which started at seven and one-half pounds and were increased to fifteen pounds. Defendant further said that if he had been informed by plaintiff that she was suffering pain, and if he had believed her, he would have reduced the weights.

■ The complaints of pain made by plaintiff to defendant's physical therapists constituted notice to defendant of such complaints. Defendant's own testimony tended to show that he failed to conform to the medical standard of care in the community, with which he was familiar. Moreover, although Dr. Snead was not directly asked if she was familiar with the applicable standard of care, her testimony shows that she was familiar with the standard of care within the community for treatment of a person in the same or similar circumstances as plaintiff. *See King v. Bauer,* 688 S.W.2d 845 (Tex.1985); *Christian v. Jeter,* 445 S.W.2d 51 (Tex.Civ.App.—Waco 1969, writ ref'd n.r.e.); *Garza v. Keillor,* 623 S.W.2d 669 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Defendant's first point of error is overruled.

Defendant, in his seventh point of error, contends that the trial court erred in allowing Dr. Snead to testify on the ground that she was not of the same school of medicine as defendant. The point cannot be sustained.

■ The general rule of law in Texas is that a plaintiff in a medical malpractice case has the burden of proving its case through a practitioner of the same school of medicine. *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779 (1949); *Roark v. Allen,* 633 S.W.2d 804, 809 (Tex.1982). There are, however, exceptions to the general rule as established in the case of *Porter v. Puryear,* 153 Tex. 82, 262 S.W.2d 933, 936 (1953), wherein the general rule was held not to apply in a situation where the subject of inquiry is common to and equally developed in all fields of medical practice.

In interpreting the exception laid down in *Puryear,* the appellate courts of this state have consistently held that a medical witness is competent to testify if he has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant. *Hersh v. Hendley,* 626 S.W.2d 151, 154 (Tex.Civ.App.—Fort Worth, 1981, no writ); *Dupree v. Palmarozzi,* 596 S.W.2d 544, 547 (Tex.Civ.App.—Beaumont 1980, no writ); *Simpson v. Glenn,* 537 S.W.2d 114, 117 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.) and *Christian v. Jeter, supra.*

■ Here, Dr. Snead was not asked whether the treatment of plaintiff involved a subject of inquiry common to and equally developed in all fields of medical practice. However, the subject of inquiry in the point under consideration was the standard of care applicable to the prescription and administration of physical therapy to a person similar to plaintiff. In that respect, Dr. Snead testified that she administered physical therapy on a regular basis; that physical therapy formed a large part of her practice; that she had a great deal of experience in administering physical therapy to her patients; that many of her patients suffer from spinal stenosis; and that what constitutes spinal stenosis is within a general physician's knowledge. The trial court correctly applied the *Puryear* exception and properly decided that Dr. Snead was

qualified to testify as a medical expert witness in this case.

Moreover, the question as to whether a witness is qualified as an expert is one for judicial determination and is reviewable only for an abuse of discretion. *Sears v. Cooper*, 574 S.W.2d 612, 615 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.); *Standard Motor Company v. Blood*, 380 S.W.2d 651, 653 (Tex.Civ.App.—Houston [1st Dist.] 1964, no writ). There is no point of error asserting an abuse of discretion. Defendant's seventh point of error is overruled.

Defendant, in his eighth point of error, says that the trial court erred in permitting Dr. Marvin Chatkoff to testify, over his objection, on the ground that he "was not even a medical doctor, much less a practitioner of the same school of medicine" as defendant. We do not agree.

■ Non-physicians may qualify as medical experts by virtue of special experience. *Johnson v. Hermann Hospital*, 659 S.W.2d 124, 126 (Tex.Civ.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Warren v. Hartnett*, 561 S.W.2d 860, 863 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.).

Dr. Chatkoff received a Bachelor's degree from the University of Oklahoma, obtained a Master's degree in physics from the University of Southern California, and then obtained a Doctoral degree in physics and biophysics at the University of New Mexico. While working on his doctorate, he was employed at the medical school. After receiving his Doctoral degree, he was employed as an associate professor in the Department of Medicine and was also Assistant Dean of the medical school. In 1971 he left the medical school to become a member of the faculty at the Health Science Center in San Antonio, Texas. Since that time he has been involved in teaching medical students, graduate students, residents and interns in mechanics of various kinds. He also had an appointment at the University of Texas at San Antonio when it opened to teach physics to the physical therapy students as well as to the ordinary students in physics and engineering.

■ Dr. Chatkoff's testimony was confined to his precise area of expertise in biophysics. We hold that he was qualified to testify concerning the mechanics, forces and effects of weights used in administering physical therapy by orthopedic specialists to their patients. Defendant's eighth point of error is overruled.

The jury findings, hereinbefore set out, are challenged by defendant in this appeal. He contends that there is "no evidence," or in the alternative, "factually insufficient evidence" to support those findings.

In deciding the "no evidence" and "factually insufficient evidence" points, we follow the well established standards of review. *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361 (1960).

Defendant testified that spinal stenosis is slow in forming and that if plaintiff had it in 1982, she probably had it in 1979. Dr. Dennis Ray, an orthopedic surgeon who was called as a witness by defendant, in response to a question propounded to him on cross examination, testified:

Q: Let me ask you, Doctor, is it within all medical probability that if she (plaintiff) had spinal stenosis back around December of 1983, approximately when you saw her, that she had it at the time she received physical therapy from Doctor Bilderback?

A: Yes, and before.

■ Dr. Rafael Parra, a neurological surgeon, treated plaintiff from March 23, 1982 until sometime after October 13, 1982. At that time plaintiff was complaining of low back pain. He wrote Wilford Hall Medical Center on October 13, 1982, wherein, among other statements regarding plaintiff's complaint, he stated:

X-rays were reviewed on this patient which demonstrated spinal stenosis with some arthritic changes ...

Dr. Parra's letter was introduced into evidence by defendant. There is ample evidence which supports the jury's finding that plaintiff had spinal stenosis on September 9, 1981.

■ The findings that defendant's treatment of plaintiff aggravated her spinal stenosis, and that such aggravation was negligence and a proximate cause of the injuries for which she sued are supported by sufficient evidence of probative value. The evidence with respect to each finding is in excess of that required under both the "no evidence" and "factually insufficient evidence" standards of review.

Dr. Snead testified that a person who has damaged tissue does not need extra stress put on such tissue, and that the weight therapy employed by defendant in treating plaintiff should have been discontinued when plaintiff repeatedly complained of severe back and leg pains during and after the prescribed exercises with the weights. Dr. Snead further testified that it was probable that defendant's therapy aggravated plaintiff's condition.

Dr. Charkoff testified that the force and effect of the weights as attached to plaintiff's legs during the therapy ordered by defendant was approximately 189 pounds of compression on her spine, which was inappropriate in the light of pain experienced by plaintiff.

Concerning the findings of negligence and proximate cause, there is testimony from Dr. Snead, plaintiff's witness, and from Dr. Ray, defendant's witness, which supports such findings. Dr. Snead testified that the pull and torque caused by a weight which was strapped to plaintiff's ankle in the manner employed by the therapists would cause chronic irritation of the spine and that a continuation of the prescribed therapy after plaintiff complained of back pain "could have well aggravated the ligaments and cause new bone to form." Dr. Ray testified that if he had continuous complaints of pain from a patient that he would discontinue the physical therapy. And, defendant said that he would have reduced the weights if he had

been aware of plaintiff's complaints of numbness. It is undisputed that plaintiff repeatedly complained of pain and numbness and that such complaints were duly recorded in the record compiled by defendant's therapists. There is ample evidence to support the jury's findings of negligence and proximate cause.

■ Next, we turn to the jury's findings that defendant failed to diagnose and treat spinal stenosis under the generally accepted standards in the community for treatment of a person in the same or similar physical condition as plaintiff, and that such failure was negligence and a proximate cause of plaintiff's injuries, made the basis of this suit. As will be shown, there was ample evidence to support such findings.

Defendant testified that if plaintiff had complained to him that she was experiencing back pain, he would have examined her back, but that "she never complained of back pain to me." It is undisputed that plaintiff did not personally tell defendant that she was suffering back pain, and there is no evidence that she was experiencing back pain when she first consulted defendant. However, it is also undisputed that she did commence suffering back pain when the physical therapy treatments commenced, and that such pain continued thereafter. It is further undisputed that such complaints were made by plaintiff to defendant's therapists, and were reduced to writing by them. Apparently, defendant did not examine the notations made by his therapists, or if he did examine them, he ignored the complaints of pain. Defendant did not diagnose spinal stenosis. There is sufficient evidence in the record which reveals that had defendant examined plaintiff's back after she complained of pain that he would have determined that she had spinal stenosis, and would have treated her for that disability. We have already discussed the testimony from the several witnesses on the points raised by defendant. No need exists to reiterate such testimony. The evidence, already discussed, shows that spinal stenosis can be aggrava-

ted by weight therapy, and in this case was aggravated. Such evidence shows that under all of the facts present in this case, the proper course for defendant required that he examine plaintiff's back. He did not do so, and as a result, was precluded from diagnosing spinal stenosis. We hold that there was sufficient evidence introduced at the trial which support the jury's findings that defendant failed to diagnose spinal stenosis and to treat such condition under the generally accepted standards in the community. We further hold that the findings that such failures constituted negligence and a proximate cause of plaintiff's injuries are adequately supported by the evidence.

The evidence in this case, when reviewed and tested under the above-mentioned standards, reveals that there is ample evidence to support the jury's findings which are attacked by defendant in this appeal by "no evidence" and "factually insufficient evidence" points. Accordingly, defendant's second, third, fourth, fifth and sixth points of error are overruled.

The trial court did not award prejudgment interest to plaintiff. The failure to do so is raised by plaintiff in a cross-point, and request is made that this Court make such award.

On June 5, 1985, the Texas Supreme Court stated that "the time has come to revise the prejudgment interest rule to make injured parties whole and restore equity ..." and thus, "... as a matter of law, a prevailing plaintiff may recover prejudgment interest compounded daily ... on damages that have accrued by the time of judgment." *Cavnar v. Quality Control Parking Inc.*, 696 S.W.2d 549, 554 (Tex. 1985). The Court further stated: "Our holding in this case applies to all future cases as well as those still in the judicial process involving wrongful death, survival and personal injury actions." 696 S.W.2d at 556.

In the case at bar, plaintiff did not pray for prejudgment interest; he did not request a trial amendment for a recovery of prejudgment interest. The issue was not tried by consent. Plaintiff did not request the trial court to award prejudgment interest as damages. That request is made for the first time in this Court.

It has long been settled law in this state that a judgment of the trial court must conform to the pleadings and that a judgment rendered without pleadings to support it is fatally defective. *Stoner v. Thompson*, 578 S.W.2d 679 (Tex.1979); *Oil Field Hauler's Ass'n v. Railroad Commission*, 381 S.W.2d 183 (Tex.1964); *Starr v. Ferguson*, 140 Tex. 80, 166 S.W.2d 130 (Tex. Comm'n App.1942, opinion adopted); *Stone v. Boone*, 160 S.W.2d 578 (Tex.Civ. App.—Fort Worth 1937, writ ref'd); *Hartford Accident & Indemnity Co. v. Moore*, 102 S.W.2d 441 (Tex.Civ.App.—Dallas 1937, writ ref'd); *Farm & Home Savings & Loan Ass'n. v. Muhl*, 37 S.W.2d 316 (Tex. Civ.App.—Waco 1931, writ ref'd); TEX.R. CIV.P. 301.

Neither the Court of Appeals nor the Supreme Court in their respective opinions in *Cavnar* stated whether the plaintiffs prayed for a recovery of prejudgment interest. However, in the Court of Appeals opinion, 678 S.W.2d 548, 552, it was stated: "The trial court also denied recovery for pre-judgment interest." The Supreme Court, in its opinion, 696 S.W.2d 549, 551, stated: "However, the trial court stated in its judgment that it would have allowed recovery for ... prejudgment interest if such damages had been recoverable under Texas law." Thus, the issue before the court was whether prejudgment interest, regardless of whether it is characterized as damages or as interest, is recoverable as a matter of law. As noted, the opinions are silent on the question of whether plaintiffs prayed for a recovery of prejudgment interest as damages or as interest. Since neither the Court of Appeals nor the Supreme Court addressed the necessity of pleadings for a recovery of prejudgment interest, and in view of the settled law on the subject and the fact that the Supreme Court did not change, alter or amend the existing legal requirement that a judgment must be supported by pleadings, we con-

clude that the plaintiffs in *Cavnar* raised the issue of prejudgment interest at the trial level. In that respect, *Cavnar* is distinguishable from the case at bar, and does not mandate an award by this Court of prejudgment interest.

In order to recover prejudgment interest, a pleading therefor, absent a trial of the issue by consent, is required. *Cavnar* did not change that rule. Even though this case is still in the judicial process, prejudgment interest is not recoverable because there are no pleadings to support a judgment which includes such an award. Plaintiff's cross-point is overruled.

The judgment of the trial court is affirmed.